## No. 11,244.

### WILLIAM N. BRADLEY ET AL. VS. JOHN N. PHARR.

1. Public roads in Louisiana are established in three ways: (1) by dedication; (2) by expropriation; (3) by the exercise of a public servitude imposed by law.

2. The soil of public roads belongs to the owner of the land on which they are made, and in case of roads bordering navigable streams that ownership is unimpaired, except to the extent of the servitude imposed and defined by Art. 665, Rev C. C., and that definition clearly confines the servitude to uses and works of a public character.

3. The construction of a private railroad for exclusive private use is entirely beyond the servitude imposed by law, and can no more be made on that portion of an owner's land occupied by a public road than on any other portion of his estate.

4. Statutes and decisions referring to the construction of railroads on public streets and roads embrace only railroads which act as public carriers and are of a public character. No law and no decision ever recognized the right to construct or operate a private railroad on a public highway.

5. The rights of the abutting owner are of a different character from those of other members of the general public and where his rights as owner are unwarrantably invaded by the unlawful construction of private works on his property entirely outside of any servitude due thereby, he is entitled to the ordinary remedies of an owner without the necessity of proving special and immediate injury.

Bradley et al. vs. Pharr.

A PPEAL from the Seventeenth District Court, Parish of St. Mary. *Allen, J.*

*D. Caffery & Son* for Plaintiffs and Appellees:

1. The title to the soil of public roads vests in the proprietors of the lands over which they run. The public owns nothing but a servitude of way. C. C. 658; 3 An. 382.

2. A use of a road different from that originally intended at the time of the dedication to the public service, or inconsistent with it, is not permissible. Cooley on Con. Lim., Sec. 556; 33 An. 624.

3. Any permanent construction on a public place is inconsistent with the easement of the public over that part of the public place occupied by the construction. 4 O. S. 3; 6 R. 349; 3 L 563; 18 L. 295.

4. Public places, such as roads and streets, can not be appropriated to private use. 3 O. S. 303, 296; 2 An. 770; C. C. 454, 458, 863, 296. Dillon on Mun. Corp., Secs. 61, 518; 27 N. Y. 611; 70 Pa. St. 210

5. The grant of the use of a public place for private purposes is *ultra vires* of a police jury or of any other political corporation in Louisiana. Const. of 1879, Arts. 47 and 56; 27 An. 415; 32 An. 268.

6. A private grant must be construed against the grantee, and any violation of its conditions works the annulment of the grant.

7. The construction of a tramway upon a public road, under a violated permission from a police jury powerless to give such permission, is an unauthorized construction, and a nuisance which the proprietor of the soil of the road and of the adjacent land may have abated, as inflicting an injury to himself. 37 An. 475; 3 L. 566; 6 R. 349; 6 East. 427; 35 An. 1062; 4 An. 30.

8. The construction for private purposes of a tramway upon soil the title to which is in a private person, is a trespass upon the property of that person, on which he may base an action for damages. 14 An. 283; 39 An. 996.

9. Even when there is no proof of actual damages they are allowed in cases of trespass. Where there is proof of actual injury, they must be allowed. There can be no trespass without damage. Cooley on Torts, Secs. 63, 64; Sutherland on Damages, Vol. 3, p. 364, 374, 385, 398, 469; R. C. C. 1934; 11 An. 39; 20 An. 500; 29 An. 172; 8 L. 26; 13 An. 445; 39 An. 996; 14 An. 283.

*Philip H. Mentz* for Defendant and Appellant:

A private action for a public nuisance is maintained by one who suffers therefrom some particular loss or damage beyond that suffered by him in common with all others affected by the nuisance. Eng. and Amer. Enc. of Law, Vol. 16, p. 971, verbo Nuisance. Private action.

Interference with a common right does not of itself afford a cause of action by an individual. Id.

Special or particular damage consequent on its interference does. Id.

To support an action the damage must differ in kind as well as in degree from that suffered in common. That the plaintiff suffers more inconvenience than others from his proximity to the nuisance is not enough. Id., p. 976

The plaintiff must show actual damage sustained and not damage resting in contemplation merely. It is not enough, for example, that the obstruction to a highway or river would have resulted in damage to him had he attempted to

use it so long as he did not make the *attempt, or that could he have used it*, he would have saved money; though, in one sense, here is damage, it is not such damage as gives a right of action. Id., p. 975.

The ordinary powers of municipal corporations are ample enough, in the absence of express or other legislation on the subject indicating a different intent, to authorize them to permit or refuse to permit the use of highways for railways operated by animal power. Dillon's Mun. Cor., Secs. 724, Ed. 1890; 14 La. An. 842.

Railways operated by horses, which do not exclude the free passage of ordinary vehicles, do not create a new burden (or servitude) upon the land. Id., Secs. 725 and 722; C. C. 729-787.

The abutting proprietor must be taken to contemplate all improved and more convenient modes of use which are reasonably consistent with the use of the street by ordinary vehicles, and in the usual modes. Id., Sec. 722.

It is submitted that an examination of Louisiana cases anterior to 1855 will show that the question of the right of private action to remove an obstruction from the public highway was confused with the right of private action to demolish a house or other edifice erected in a public place, which last right was given to every individual corporator by a law of the Partidas, but that in cases arising since that time this confusion does not exist, and the right of private action to abate an obstruction on the highways is treated from the same standpoint as in sister States.

It is submitted that this right is not predicated upon the obstruction itself, but upon some damage arising therefrom which is peculiar to the complainant and not suffered in common with the public.

These latter cases are discussed in this brief.

It is submitted that an examination of the many cases quoted in notes to pp. 971, 972, 973, 974, Vol. 16, Eng. and Amer. Enc. of Law, being the same cases as are quoted in approved text writers, will show, as in the later Louisiana cases, that the right of private action to abate a nuisance in the highway does not depend on the existence of the nuisance or obstruction, but upon some injury resulting therefrom which is peculiar to the plaintiff, such as cutting off access to property, compelling plaintiff to travel by more circuitous routes, loss of trade or custom, damage to goods, noise, smoke, bad odors, etc.

---

The opinion of the court was delivered by

FENNER, J.   Plaintiffs aver that they are the owners of a plantation fronting on the Atchafalaya river, which is a navigable stream; that their said property is, by law, subject to a servitude of way in favor of the public; that in the exercise of said servitude a public road has been established from the earliest settlement of the country running along or near the front of said plantation; that defendant had begun and was then engaged in constructing on said public road a private railway for his own exclusive use, and that his occupation of said public road in this manner is a trespass and a nuisance, injurious to plaintiffs and in violation of their legal rights.   They ask judgment for damages and ordering removal of the railway.

The defendant filed an exception of no cause of action, and after this was overruled he answered, setting up that in constructing said railway he acted under permission granted by the police jury of the parish, which had lawful authority to grant the same.

He further averred that he was engaged in the cultivation and manufacture of sugar, owning one plantation above and another below that of the plaintiffs; that this public road, like all others in this parish, was at its worst in winter, when it was most needed, owing to the climate, season and soil and the heavy hauling of cane on it in winter; that the hauling that he did upon this public road in winter, in transporting his crops from the lower to upper place was about 90 per cent. of the whole of the public traffic on this road, and that he had the legal right to so haul upon the public road; but that this hauling, done in winter, made this road almost impassable for the public; that the tramway removed this heavy hauling from the public road and left it in good condition for the public use; that it was the condition of the grant made to him that he should keep in good order the public road through which this tramway passed, which condition has been fully complied with; that the laying of the tramway has been of benefit to the plaintiffs and the public; and he prayed that the suit be dismissed.

The case was submitted to a jury, who rendered a verdict against the defendant, ordering him to remove the tramway, but without allowing any damages; the defendant has appealed.

Under the view we take of the law applicable to this case, we do not find it necessary to discuss the conflicting testimony on the subjects of damage to plaintiffs and inconvenience to the public.

It is not disputed that the railway is purely private, intended for, and restricted to, the exclusive use of defendant; that it occupies about one-third of the public road, and occupies that portion in such manner as to prevent its use for purposes of a highway by other than pedestrians. It is also admitted that defendant acted under the following resolution of the police jury:

" Be it ordained, that the right of way given John N. Pharr to lay a narrow-gauge railroad track on the public road leading from his Glenwild plantation sugar house to the upper line of his Fairview be granted; provided said Pharr shall make sufficient openings along the line of said railway to drain the public road, and keep said road along the line of his railroad in good repair, and said railroad not to extend over ten feet from the line fence.''

Public roads are established in Louisiana in three ways: 1st, by dedication; 2d, by expropriation; 3d, by the exercise of a public servitude imposed by law.

The latter method is confined to roads bordering the banks of navigable streams, and is governed by the Article 665 of the Revised Civil Code: "Servitudes imposed for the public or common utility relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable rivers, and for the making and repairing of levees, roads and other public or common works."

Article 658 of the Revised Civil Code provides: "The part of an estate upon which a servitude is exercised does not cease to belong to the owner of the estate; he who has the servitude has no right of ownership in the part, but only the right of using it. Hence the soil of public roads belongs to the owner of the land on which they are made, though the public has the use of them."

The public road with which we are here concerned runs along the bank of the Atchafalaya river, and was evidently established in the exercise of the public servitude imposed by Art. 665. It follows, under the plain precepts of the law above quoted, that plaintiff's ownership of that portion of his land over which the road runs remains unimpaired, save that it is burdened with the public servitude imposed and defined by that article, and that definition very clearly confines the servitude to purposes of "*public* or *common* utility," to "*public* use," and to "the making and repairing of levees, roads and other *public* or *common* works."

The railroad constructed by defendant is not "for the public or common utility," or for "public use," and is not a "public or common work." It is a purely private work, for exclusive private use; and we can discover in the law no broader warrant for the construction of such a work on that portion of plaintiff's land occupied by the public road than on any other portion thereof. Whatever incidental benefits may arise to the public from such a construction on the public road would be conferred in greater degree by a like construction on plaintiff's land adjoining the road, and such benefits can no more sustain the construction, in violation of his legal rights, in one case than in the other. The rules applicable to the establishment of public railways on streets and roads need not be here discussed very largely, because they are governed by entirely different principles. So far as ordinary street railways are concerned, as Mr.

Elliott says, "they are not regarded as a new and different use of the street, but are considered as an improved means of travel in furtherance of the ordinary use of the highway, and not as an impediment thereto." Elliott, Roads and Streets, p. 529. Or, as Mr. Cooley says: "When land is taken or dedicated for a town street, it is unquestionably appropriated for all the ordinary purposes of a town street; not merely the purposes to which such streets were formerly applied, but those demanded by new improvements and new wants. Among these purposes is the use for carriages which run on a grooved track," etc. Cooley on Const. Lim. 556.

As regards ordinary steam railways, while they may be lawfully established by the municipal authorities on the streets of cities where the fee of the street is in the city, subject to claims of citizens for special injuries, the overwhelming weight of authority is against the right of placing them on public highways of which the fee is in the abutting proprietors, without compensation to the latter. Elliott, Roads and Streets, p. 528; Cooley, Const. Lim., p. 663.

But no text writer and no decision has been found intimating the existence of any power to authorize the construction of a private railroad for exclusive individual use on a public street or highway under any circumstances.

Mr. Elliott very emphatically says:

"A municipal corporation can not grant a right to construct a railroad in a street for private use. We suppose it to be indispensable to the validity of a direct legislative grant that in every instance the use should be public, for highways are held in trust for the public for public purposes and for no other. This rule is clearly the legitimate sequence of fundamental principles." Elliott, Roads and Streets, p. 565.

We have discovered only a single case in which such a pretension was ever directly advanced, in which the city of Fort Scott, Kansas, granted permission to the owners of an elevator to construct a railroad on a public street for their private use in carrying grain to and from their elevator, and, on injunction by an abuttor on the street, the Kansas Supreme Court said: "We think it may be laid down broadly and upon general principles that no city has any right or authority to give permission to any individual or corporation to construct or operate a purely private railroad upon any public street, and that all the statutes which have reference to railroad companies or others constructing or operating railroads through or upon

the public streets simply have reference to such railroad companies or others as perform the duties of common or public carriers, and to such railroads as are public or *quasi*-public in their character. * * * No private excavations can be allowed in a public street, no laying down of a private railroad track, and indeed no use of a public street can be allowed, except its use for public travel and transportation. And we further think that whenever any person or corporation attempts to construct a purely private railroad on a public street, any abutting lot owner whose property is or may be injured by it may maintain his action to enjoin. By such action he is merely protecting his own private interests, and interests which differ from those possessed by the public in general. In support of such right of action we would refer to the following cases: Milhau vs. Sharp, 27 N. Y. 611; White vs. Flannigan, 1 Md. 525; Ewell vs. Greenwood, 26 Iowa, 377; Wilson vs. City, 39 Wis. 160." Mikesell vs. Durkee, 34 Kan. 509.

We thoroughly agree with the Kansas court in the foregoing exposition of the law.

The authorities as to the rights of abutting proprietors are collated by Mr. Elliott and they fully recognize the broader character of their rights than those accorded to the mere citizen and accord to him, or owner of the fee, subject only to the public easement, all the ordinary remedies of an owner, including trespass, ejectment and injunction in cases where his rights are unwarrantably invaded. Elliott on Streets and R., pp. 536, 308, 310; see also 3 Kent's Com., 11th Ed., p. 548; Angel on Highways, Sec. 319.

The law of Louisiana is even more liberal on this subject. Bell vs. Edwards, 37 An. 475; Dudley vs. Tilton, 14 An. 281; Allard vs. Lebeau, 2 N. S. 319; Mayor vs. Gravier, 11 O. S. 621.

Indeed our Code of Practice specially authorizes an injunction in the case " when the defendant is in the act of building or constructing some work tending to obstruct a place of which the public has the use." Art. 298. And the previous article authorizes any plaintiff to invoke such remedy to prohibit an act " which he contends may be injurious to him, or impair a right which he claims."

We are not called upon to investigate the particular measure of injury or damage inflicted on plaintiff in this case. It is sufficient to say that the act of defendant violates his clear legal rights, as we have above expounded them.

Judgment affirmed.