(42 South. 212.)

No. 16,059.

MAYRONNE et ux. v. KEEGAN.

(Nov. 12, 1906. On Rehearing, June 18, 1906.)

1. MUNICIPAL CORPORATIONS — OBSTRUCTIONS IN STREET—LIABILITY OF PERSON CAUSING OBSTRUCTION.

Where a boy 10 years of age was walking at night on a public levee, and was frightened by dogs, and thereupon ran down into a street and came into violent contact with certain pieces of machinery negligently left in the public thoroughfare by the employés of the defendant, and was thereby seriously injured, the defendant will be held responsible in damages.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 1688.]

2. SAME—PROXIMATE CAUSE.

In such cases the unlawful obstruction of the street is the proximate cause of the injury, and it is no excuse that defendant did not anticipate that any person would approach the street from the levee or would be frightened therefrom by the pursuit of dogs.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, §§ 1667, 1670.]

On Rehearing.

3. SAME.

The town of Gretna, on the east bank of the Mississippi river opposite New Orleans, is unincorporated, and therefore, like the rest of the territory of Jefferson Parish, is under the government of the police jury of that parish. That body and the so-called trustees of the town joined in leasing to private individuals the open space, or common, along the front of the town, between the front street and the public levee which is along the river bank. For years the lessees occupied this space. They used as a landing, and left open for that purpose, a part of it that would have been occupied by one of the streets perpendicular to the levee if said street had been continued to the levee; and pedestrians going to or from the levee, on top of which was a footpath, would traverse said open space by two well beaten paths, one diagonally across, and one straight across. The part of the leased premises thus left open by the lessees, and used by them as a landing, had, a width between Front street and the levee of only 36 feet, and wagons and other vehicles had no oc-

casion to use it, and did not in fact use it, except for hauling the freight of the lessees. *Held*, that the authority of the police jury over the public roads does not empower it to lease the public common for private use, but that the lease in question showed the willingness of the public authorities that the place should be used as a landing, and that, under all the circumstances, the space left open by the lessees, and used by them for years as a landing, was in fact, a landing, and not a street, in the same way that the open space between the streets of New Orleans and the river, is a landing, and not a street; and that the leaving of freight overnight on said open space was not negligence per se; and that the question of whether a danger signal should have been placed on said freight, depends upon whether reasonable prudence, or custom, so required. The lessee *held* not responsible for injury to a boy who ran in the dark down the levee out of the beaten paths, and fell upon machinery left overnight on the landing.

Land, J., dissenting.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

Action by Jules Mayronne and wife against J. J. Keegan. Judgment for defendant, and plaintiffs appeal. Reversed.

Hamilton Numa Gautier and T. M. & J. D. Miller, for appellants. Clegg & Quintero and Charles Ferdinand Claiborne, for appellee.

LAND, J. This is a suit for damages for personal injuries suffered by plaintiff's minor son and occasioned by his running at night against obstructions alleged to have been unlawfully placed in a public street by the defendant, and for medical and other expenses incurred by the father as the consequence of said injuries.

There was judgment in favor of defendant, and plaintiffs have appealed.

The trial judge assigned the following reasons for the judgment rendered, to wit:

"It was negligence in defendant's employés to leave obstructions over night in a pathway which they were bound to know might be used at any time without placing a light to warn the passer by.

"But this was a duty they owed only to such as might use the path, and not to those

who might come upon the obstructions from some unexpected quarter.

"Had the defendant's machinery been placed a little higher up the levee (even a foot or two) there would have been no negligence in failing to put a light upon it; for there being no occasion to pass at that point, there was no reason to suppose that any one would do so.

"Now the direction which plaintiff's son took to elude his pursuers was unusual, but it happened that it led him towards and across the regular path in which the machinery had been laid. It was, however, a mere coincidence that his route crossed the regular path at that precise point, or, to put it in another way, it would have been no negligence to have left the machinery along the unexpected route taken by the plaintiff's son, and it was purely accidental that it lay where that route happened to cross the other.

"There is no natural connection between defendant's negligence and the injury to plaintiff's son.

"He would have been injured just as well had the machinery been placed a few feet higher up the levee where it might with perfect propriety have been.

"There will therefore be judgment for the defendant."

On January 31, 1902, the defendant caused the iron dipper of his dredge boat to be taken to pieces and dumped about the center of the prolongation of Newton street, which had been used as a public thoroughfare for time beyond memory, and is called for by the lease of 1898 offered in evidence by the defendant. A little after dark on the same day, plaintiff's son, 10 years of age, was coming down to the levee to meet the ferryboat then crossing the river, on which he expected his mother. When abreast the foot of Newton street he was frightened by dogs, one of which was kept on the dredge boat, and ran down the levee into the street where he came into violent contact with the large pieces of iron there deposited by the employés of the defendant, as above stated. The boy was seriously injured in the left leg, was under medical treatment for months, and finally was discharged with a stiff knee—a cripple for life.

The father was put to great expense for medical bills and other necessary charges.

If, as found by the district judge, the defendant negligently obstructed Newton street, and plaintiff's minor son was injured by the obstructions, it matters not whether he was at the time proceeding along or across said highway; the right of public passage being the same in either event.

If the unlawful obstructions caused the injury, it is immaterial at what point or from what direction the boy entered the street.

Having reached the highway, the boy had the right to cross it or follow it. The particular mode pursued to reach the street, if it has any bearing in this case, was a remote cause, and the obstruction was the immediate cause of the accident.

Defendant cannot excuse himself by saying:

"It is true that I obstructed the street, but I did not expect that any one would approach the highway from the levee and I did not apprehend that the boy would be pursued by dogs."

Defendant would be bound to know that persons are likely at any time to run or walk over a public thoroughfare in every conceivable direction and from motives too numerous to mention.

The dog episode would have proved innoxious had the street not been unlawfully obstructed.

After a careful review of all the evidence in the record, we conclude that the judgment appealed from is manifestly erroneous, and should be reversed. The judge a quo did not pass on the question of damages, some items of which appear to us to be extravagant or unnecessary.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed; and it is now ordered and decreed that this cause be remanded to the district court for further proceedings according to law and the views herein expressed; defendant to pay costs of appeal.

On Rehearing.

PROVOSTY, J. The town of Mechanicsham, now Gretna, situated on the right bank of the Mississippi river, opposite New Orleans, in the parish of Jefferson, was formerly incorporated and under the government of trustees, who had legislative authority to lease the space between the river and the front street of the town. The law which conferred this authority however (Act No. 20, 1858, p. 15), expressly required that "the front of each street perpendicular to the river shall be left free and open to the public use." But by Act No. 93, 1884, p. 121, all acts conferring local self-government on the town were repealed, and the territory of the town reverted to its original condition of being merely a part of the parish of Jefferson, subject to the jurisdiction of the police jury of that parish. It would seem, however, that trustees continued to be elected in the town; for, in August, 1898, the trustees of the town, in conjunction with the police jury of the parish, leased to the Interstate Transportation Company a part of the common, or open space, in front of the town, describing the area embraced in the lease, as follows:

"That portion of the front of the town of Mechanicsham inside of the levee and extending from the upper line of said front now under lease to August Gerdes, or assigns, up to within 50 feet of the lower line of Copernic avenue. Save and except therefrom 10 feet beginning at the upper line of the property now leased to August Gerdes and running into the direction towards Newton street, which is to be reserved as a passage way."

In September, 1901, this lease was sold to the Union Oil Co., and from that time the leased premises were occupied by that company.

The distance across the space thus leased, that is to say, from the car line along the front street, to the base of the levee, is about 36 feet. Newton street, which is one of the streets perpendicular to the river, if projected to the river, would pass about the center of the leased space. As a matter of fact, Newton street, as a defined street, stops at Front street, and the space that would be occupied by Newton street, if it was continued to the levee, is land not marked as a street, not paved, or banquetted, or even ditched. The lessee, however, has left this space open and unobstructed, while he has used the space above as dumping ground for machinery, lumber, scrap iron and débris, and has constructed a warehouse on the space below. On the river side of the levee he has placed a building about half way across the space that would be occupied by the prolongation of Newton street to the river. Along the line of the prolongation of the upper sidewalk of Newton street he has placed steps going up the levee. Both inside and outside of the levee, the space that would be occupied by the prolongation of Newton street, and which has thus been left unobstructed, save by the building on the river side of the levee, has been used by the said lessees as a landing place for their freight and merchandise. Freight would be put there and left there until either taken on board boat, or on board cars, or hauled away by wagons. Except in connection of this business of the lessee, no wagons or other vehicles have come on this space. There could have been no occasion for their doing so, as they could only have gone the distance of 36 feet, which was all the space between the railroad track and the levee. They could not have gone on the levee, as the place was not a public landing. But pedestrians would go to and from the levee along the line of the steps and of the upper sidewalk of Newton street; moreover, those intending to take the top of the levee for going in the direction down the levee, or those coming on the top of the levee from down the river, would follow a well-beaten path diagonally across the said open space, and ascending the levee at the lower line of said open space. To complete the description of the place, we will add that

on the river side of the levee the space on the top of the river bank, between the levee and the river, is about of the same width as between the railroad on Front street and the levee; that is to say, about 36 feet, and that when the river is up against the levee that part is under water.

On the day of the occurrence which has given rise to this suit, the defendant, Keegan, who had charge of the property of the lessee on the leased premises, and who also was the owner of a dredgeboat, had the bucket of his dredge taken to pieces and put on this open space, or landing, on the land side of the levee, with a view to sending it to the foundry by the railroad which ran along by on Front street. This bucket was of steel, and was some eight feet high, and wide in proportion; its capacity being a yard and a half or two yards of earth, and its four leaves and other parts were therefore very heavy. Those handling these leaves and other ponderous parts skidded them down the levee on a plank to a spot about the middle of the open space—about midway between the diagonal path and the path leading to the steps up the levee—intending to put them on board cars as soon as a car could be had; and they were, in point of fact, thus removed the next day. There was no other place where this freight could have been put. The plank used in moving it down the levee was left there. It was about 14 feet long, 2½ inches thick, and 8 inches wide. It lay one end resting upon the levee. The work of transferring this machinery from the dredge to the landing where it was thus left, took the entire day. It was the 31st of January.

In the evening, at about 7 o'clock, it being dark, the plaintiff's little 10 year old son and his 14 year old brother ascended the steps to the top of the levee. There they were set upon by a dog, and the younger boy, being frightened, ran down the levee upon the eight-inch plank; and, the plank upsetting with him, he fell upon the leaves of the dredge-bucket, and was injured; and the plaintiff sues defendant in damages for the injury.

The theory of plaintiff is that the spot where this machinery was left was part of Newton street, and that the leaving of the things there was negligence per se, entailing responsibility upon defendant for all consequences.

Plaintiff's learned counsel argues the case as if the lad had run across this open space, as upon a street which he had a right to expect would be free from obstruction, and had, in the darkness, struck against this machinery.

On the other hand, defendant's learned counsel insist, as their first ground of defense, that the place was leased property, having the same legal status as private property, and that persons coming upon it were at best mere licensees to whom defendant owed no duty to keep the place free from obstructions. Counsel, as their second defense, contend that even conceding that the lease was unauthorized and null, and therefore no protection, yet that the leaving of the things where they were left and for the short time they remained, was not negligence; because, at worst, the place was a landing, similar in character to the open space between the river and the front street in the city of New Orleans, and had theretofore been used in no other way than as a place for depositing freight in transit, and that therefore defendant had a right to use it in the manner he did for the temporary deposit of his freight, especially as the evidence shows that he had no other way of disposing of the freight until he could put it on board car.

To this last argument plaintiff's counsel answer that, conceding the facts to be as stated, defendant should have placed a lamp

or other signal to warn the public of the danger.

For the authority of the police jury of the parish of Jefferson to make the lease, and thus to impart to the common a quasi private character, defendant's learned counsel refer to the following sections of the Revised Statutes:

"Sec. 3364. The police jury of all the parishes of this state are authorized to pass all such ordinances as they, may deem necessary relative to roads, bridges and ditches, etc."

"Sec. 3380. No person shall turn, alter or change any public road unless it be by order of the police jury."

These statutes, ex vi terminorum, apply only to roads, and the space in question was not a road or street. But if it had been, the police jury would nevertheless have been without authority to lease it, since it is a plain proposition (at any rate in the absence of express legislative authority) the police jury cannot lease a public road for a mere private use. Bradley v. Pharr, 45 La. Ann. 426, 12 South. 618, 19 L. R. A. 647. In that case it was held by the court that a police jury was without power to authorize the occupation of a part of the public highway by a purely private railroad.

The lease was therefore unauthorized, and null. But it is not for that reason entirely without significance. It is the only action, so far as appears, the parochial authorities have ever taken with reference to the space in question, and it shows that the use of it as a landing for loading and unloading and temporarily depositing freight and merchandise had their sanction; and sustains defendants' second ground of defense, that the place was not a public street, but a landing either private or public.

As a matter of course, if the place was not a street, but a landing, the putting of the things there and leaving them over night would not be negligence—at any rate in the absence of a showing that there was no ne-cessity for so doing—and the evidence shows, on the contrary, that there was no other place where the things could have been put, and that the unloading of them had taken all day, and hence that they had to be suffered to remain overnight.

So far as concerns the putting of a lamp, or other danger signal on them, we do not find there was any necessity for doing so. The place was not a street, but a landing. While the evidence shows that it was customary to put machinery, lumber, and goods of all kinds on this landing, and to leave them there for indefinite periods, no attempt is made to show that it was customary, when things were thus left, to put a lantern upon them.

Besides, nothing shows that had the usual · red lantern been placed upon the things the accident would not have happened just the same. The little fellow did not run up against the things, but he fell upon them as a result of the plank's upsetting with him. And if it was light enough for him to have undertaken to run down an eight-inch plank, we doubt very much whether it would not have been light enough for him not to have run against an obstruction. However, we do not rest the case upon want of causal connection, but of absence of negligence. We hold that the place was a landing, and that the leaving of goods upon it overnight was not per se negligence, and that the evidence fails to show that when goods were left there it was customary to put a danger signal upon them, and that ordinary prudence would have required that it be done.

Plaintiff's learned counsel lay great stress upon the fact that the witnesses, in referring to the space in question, call it the street. But calling the place a street does not make it so. We have the photograph of the place, and an abundance of minute verbal description of it, and we know exactly what its

condition and uses were, and we know that it was a landing place, and not a street.

Judgment affirmed.

LAND, J. I dissent for the reasons stated in the original opinion of the court.