310 So.2d 607 (1975)
Lloyd F. GIARDINA and Bon Marche Furniture Company, Inc.
v.
MARRERO FURNITURE COMPANY, INC., et al.
No. 55459.
Supreme Court of Louisiana.
March 31, 1975.
*608 Greenberg & Dallam, Nathan Greenberg, Gretna, for plaintiffs-applicants.
Norman L. Sisson, Robert J. Jones, Jonathan C. Harris, Sharon P. Frazier, La. Dept. of Highways, Baton Rouge, Chauppette, Genin, Mendoza & Parent, Lawrence J. Genin, Marrero, for defendants-respondents.
DIXON, Justice.
Plaintiffs sued Marrero Furniture Company, Inc. and Louisiana Department of Highways to have a sign removed from the highway right-of-way fronting plaintiffs' property in Jefferson Parish. The trial court found there was no "immediate and irreparable injury" and dismissed the suit. The Court of Appeal affirmed with one judge dissenting. 300 So.2d 543 (La. App.1974). We granted certiorari to review these decisions.
Plaintiffs' tract of land fronts Fourth Street (formerly Jefferson Highway) for *609 a length of about 1222 feet. Ames Street intersects Fourth Street from the south and forms a T intersection. On the north side of the Fourth Street-Ames Street intersection, Marrero Furniture, a business competitor of plaintiffs, some time before plaintiffs occupied their property, erected a sign about 4 feet by 8 feet in size which directed motorists to its store three blocks away. The sign is located on the highway right-of-way, approximately 15 feet from what is determined to be the southern boundary of plaintiffs' property. Plaintiffs claim the sign causes them irreparable injury which can be remedied only by its removal.
According to the testimony, Fourth Street was built and maintained originally by the Parish of Jefferson until the 1930s when it was transferred to the State of Louisiana. Since that time it has been maintained and controlled by the Louisiana Department of Highways. The exact nature of the highway department's ownership was not proven at trial, but that determination is immaterial. Plaintiffs' evidence showed that their property was described as being bounded on the south by the highway. Therefore, they contended the property on which the sign was placed belonged either to themselves or to the highway department; Marrero Furniture contended that the property could belong to an unnamed third person.
We agree with the conclusion of the Court of Appeal that the sign was located within the right-of-way of Fourth Street.
Defendants failed to produce any authorization from the Louisiana Department of Highways to erect or maintain a sign on the right-of-way. Its continued existence on the right-of-way was therefore a violation of R.S. 32:236 which provides:
"No person shall erect or maintain any sign of any nature or a traffic control device or any thing resembling a traffic control device within the right-of-way of any highway or street, except the governing authority maintaining the highway or street, a contractor performing work upon the road or street for the governing authority, or a public service corporation or a person having official permission to install or maintain anything in the public right-of-way under the provisions of R.S. 48:344 and 381."
Under the authority of R.S. 48:347,[1] defendant highway department could have instituted this action to remove the sign. See, Department of Highways v. Capone, 248 So.2d 62 (La.App. 1st Cir. 1971). However, the department in brief stated that it did not wish to execute its discretionary authority in this instance because of its practical inability to seek the removal of all signs on this street's right-of-way. *610 Because the statute clearly states that "the department may apply to the court for any process" (emphasis added), to cause the removal of signs within the limits of the highway, the department of highways cannot be ordered to exercise this discretionary authority.
The issue is whether plaintiffs, as owners of land adjoining the highway on which the sign is illegally located, can maintain an action against the owners of the sign to have it removed. If the department of highways has merely a servitude, acquired through dedication or other means, then plaintiffs have retained ownership of the right-of-way and have a right to seek removal of any structure placed on their land which is not in accordance with the purpose of the servitude, that is, maintenance of the roadway. Jones Island Realty Co. v. Middendorf, 191 La. 456, 185 So. 881 (1939); Bradley v. Pharr, 45 La. Ann. 426, 12 So. 618 (1893).
If the department of highways possesses full ownership of the right-of-way, plaintiffs also have a right to sue for the removal of the sign located on a public way.[2] Under C.C. 861 it has been held that a citizen of the community has a right of action coincidental with that of the governing authority to sue for the removal of structures which physically obstruct his use of the public way.[3]
However, in the case before us the sign is not claimed to be an obstruction which prevents a citizen's use of the public way. Rather, the sign is alleged to cause peculiar harm to an adjoining landowner. Historically, an adjoining landowner has been recognized as possessing an additional rightseparate from the ordinary citizen *611 to sue to remove encroachments on public property which cause harm peculiar to him. This right was first recognized and exercised in Mayor, etc. of New Orleans v. Gravier, 11 Martin (O.S.) 620 (1822), when the owner of lots fronting a public square was permitted to intervene in the city's suit seeking the removal of buildings placed on the public square by the defendant. Defendant's objection to the intervention of the adjoining landowner was rejected by this court on the following rationale:
"According to the first and third laws of the 22d title of the 3d Partida, any individual may forbid the erection of a house, or other edifice, in public places. The necessary consequence of giving this right, is, that the person who makes the prohibition, shall be allowed to apply to a court of justice to aid him in the maintenance of it. It will save expense and delay to permit the party now before the court to do this in the present suit, and as he merely urges his private right to aid the public in the maintenance of theirs, and asks judgment for the same thing, his appearing in the cause creates no confusion." (11 Martin (O.S.) at 623).
(Note: The reference to the 3d Partida may be in error. See footnote 4).
The later cases of Herbert v. Benson, 2 La.Ann. 770 (1847) and Bell v. Edwards, 37 La.Ann. 475 (1885), further support plaintiffs' contention that they have a direct action against the owner of the sign. In Herbert the plaintiff was permitted to sue for the removal of defendant's warehouse which had been erected on a portion of the quay in front of plaintiff's lot. In Bell the issue involved plaintiff's suit to remove a railroad switch from the public street in front of his home. The court stated plaintiff's right to be as follows:
"This unauthorized construction and use of the switch in front of plaintiff's property, is a nuisance, which he has a right to have abated, as inflicting injury peculiar to himself.
"As the plaintiff has shown no legal interest in asking relief against the laying and use of the track or switch which is not in front of his property, we do not think that he can be heard to champion the rights of those who do not complain." (37 La.Ann. at 477).
The record before us establishes that plaintiffs have suffered no irreparable injury from this relatively small sign of their competitor; nor, for that matter, does it show any monetary loss. Plaintiffs would simply prefer to have the sign removed so they could take full advantage of their frontage on the street, for their own purposes. Defendants contend, therefore, that plaintiffs are not entitled to a mandatory injunction ordering the removal of the sign, as such relief is not authorized by law. C.C.P. 3601 provides:
"An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law;...
"During the pendency of an action for an injunction the court may issue a temporary restraining order, a preliminary injunction, or both, except in cases where prohibited, in accordance with the provisions of this Chapter.
"Except as otherwise provided by law, an application for injunctive relief shall be by petition."
It is "specifically provided by law" in C.C. 861 that an individual may provoke the destruction of works which embarrass public places. According to the Projet of the Civil Code of 1825, C.C. 861 was derived from Las Siete Partidas;[4] it was *612 reenacted without change in the Revised Civil Code of 1870. Article 861 provides:
"Works which have been formerly built on public places, or in the beds of rivers or navigable streams, or on their banks, and which obstruct or embarrass the use of these places, rivers, streams, or their banks, may be destroyed at the expense of those who claim them, at the instance of the corporation of the place, or of any individual of full age residing in the place where they are situated.

"And the owner of these works can not prevent their being destroyed under pretext of any prescription or possession, even immemorial, which he may have had of it, if it be proved that at the time these works were constructed, the soil on which they are built was public, and has not ceased to be so since." (Emphasis added).
Article 861 calls for the removal of any works "which obstruct or embarrass the use" of public places. Since it can be said that the sign does not obstruct the street, the question is whether the sign "embarrasses the use" of the public way. The question has not been answered in the prior jurisprudence.[5] One commentator suggests the following interpretation of "embarrass:"
"Article 861 uses the expressions `obstruct' and `embarrass the use of' disjunctively. It might be argued that works which are slightly less than complete obstruction of a public place are excluded from the works which are subject to destruction under Article 861. However, instead of being a phrase which excludes works from the coverage of Article 861, the words `embarrass the use of' are designed to bring within the coverage of the article the slightest encroachment upon public soil irrespective of the actual damage caused. The language `merely encroach upon the public soil without preventing its use' which appears in Article 862 is an exception to Article 861 and presupposes a lesser degree *613 of obstruction than the phrase `embarrass the use of' in Article 861. Therefore, it is submitted that the phrase `embarrass the use of' in Article 861 comprehends the slightest encroachment upon public soil irrespective of the damage caused. The logical result of this interpretation is that whenever a work encroaches upon public soil, Article 861 is applicable, and the only defense available to the owner of the work is that set out in Article 862." (Comment, "The Encroachment of Private Works upon Public Land in Louisiana," 23 Tul.L.Rev. 551, 555 (1949).
One meaning of "embarrass" is to "hamper with perplexity;" "embarrass" implies some influence which impedes one's freedom of thought, speech or action. Webster's New International Dictionary (2d ed. G & C Merriam Co. 1950).
We conclude that this sign on the right-of-way is the kind of structure the redactors of the Code of 1825 would have considered an "embarrassment" of a public way, if they could have foreseen the development of highway advertising. Such signs on the right-of-way complicate, impede and hinder the freedom of action of the public and the agents of the public in the maintenance of the highway for its intended purposea road for travel bounded by vacant spaces for public utilities and for a broad view for purposes of safety and aesthetics.
Therefore, we conclude that defendant Marrero Furniture Company, Inc. must remove its sign. The judgments of the courts below are affirmed as to the Louisiana Department of Highways and reversed as to Marrero Furniture Company, Inc., at its cost, and the case is remanded to the district court for the formation and rendition of a judgment in favor of plaintiffs and against defendant Marrero Furniture Company, Inc. compelling defendant to remove its sign from the highway right-of-way.
BARHAM, J., concurs and assigns reasons.
BARHAM, Justice (concurring).
I respectfully concur, being of the opinion that the more suitable basis for disposing of this case would have been under La. Civil Code art. 667. We need not concern ourselves with a little-used article concerning public works when the law governing private relations so clearly and concisely settles the issue before us.
The Louisiana Department of Highways, either as owner of a servitude or as owner in full title, is a neighbor to the adjacent landowner, Bon Marche Furniture Company, Inc. The Department of Highways maintains, or permits someone else to maintain on its land, a thing which serves no useful purpose for the Department of Highways. In fact, the maintenance of the sign is contrary to the State's policy governing the Department's use of highway property. The sign causes damage to a neighbor, the plaintiff. The damage need not be "irreparable," as envisioned by La.C.C.P. art. 3601, because that article also provides in part, "An injunction shall issue * * * in other cases specifically provided by law." La.C.C. art. 861 is not the only article in the code which specifically provides by law for injunctive relief. La.C.C. art. 667 also so provides. In fact, abatement is the sole cause of action expressed in La.C.C. art. 667.
The defendant has shown some damage, i. e., an unsightly sign that detracts from his place of business and advertises a competitor's business. That damaging construction is situated on the Department of Highways' property, although it serves absolutely no purpose of the owner. The Department of Highways abuses its right of ownership by permitting the sign to remain on its property; therefore, the Department should be required by injunction to abate the sign.
*614 Moreover, I must complain of the contortion of language in the majority's construction of La.C.C. art. 861. The majority's concentration on the construction and interpretation given to "embarrass the use" is unnecessary. When the English translation of a code article has been in error, the French text controls; and when that English translation appeared in the 1870 Code without its French counterpart, the original French text is the controlling source as long as there was no change in the language.
The article which the majority strains to construe originally appeared in identical language in the Civil Code of 1825. The French provision is "et qui en obstruent et génent l'usage." The translation of "génent l'usage" to "embarass the use" is a most strained and unusual translation in the context used, although this is not to say that "génent" cannot be properly translated in the right context to mean "embarass." The translation more properly should have been "impede" or some such word in the English language which is a modification of total obstruction. The article should read "obstruct or impede the use of these places." The redactors simply meant to say that one could neither totally block nor partially block these places; consequently, they use the language "obstruct or impede."
Article 861 was added to our Code in 1825. In the Projet to the 1825 Code, the drafters commented that there is an act stating "that those who construct works or place any impediment in the beds of navigable streams or on their banks or on other public places" (emphasis supplied) shall be prosecuted and punished and that the works should be destroyed at their expense. The drafters further commented that "[a]s the effects of this act cannot extend to works erected or put in place prior to its promulgation, we have thought proper to repeat the dispositions of our ancient laws * * *." They list as their source for the present Article 861, in addition to act of the 15th of February, 1808, Las Siete Partidas, 3 tit. 32, 1.3 and 23, and tit. 28, 1.4. The use of the word "impediment" in the act which was the source of our present Article 861 lends credence to the translation of "génent" as "impede." The Spanish sources are also obviously addressed to impediment as well as total obstruction.
In the majority's application of Article 861, they need only to have said that the article encompasses obstruction or impediment, and then they could have found the sign an impediment. However, I find it much easier and more legally cogent to denominate the sign an abuse of ownership than to characterize it an impediment.
I respectfully concur.
NOTES
[1] R.S. 48:347 reads as follows:

"A. The department may apply in the court for any process necessary to prevent the installation of any structure, sign, obstacle, object, deposit, or thing within the limits of a highway contrary to this Chapter or any lawful regulation issued hereunder.
"B. Whenever any advertising sign located within fifty feet of the outer edge of the right of way constitutes a dangerous hazard to the traveling public, the department may, after due notice to the owner thereof to remove it, apply to the district court of the parish in which the sign is located for the process necessary to effect the removal of the sign.
"C. Whenever any of the things described in Subsection A of this Section are found to exist within the limits of a highway, the department may summarily remove and dispose of it at the expense of the person responsible therefor. If it retains apparent value, the owner shall be notified, orally or in writing, to remove it within five days or such other period as may be agreed upon. If the owner be unknown or cannot be found, a written notice shall be affixed to the object setting forth that it must be removed within a period not less than five days from the date specified. Failure to remove within the specified period operates as a forfeiture of all rights thereto and the department may remove the object for its own use, or dispose of it at private or public sale, or destroy it, or dispose of it in any manner. The owner and any other person responsible therefor remains liable for any damage to public property or expenditure of highways funds resulting from the installation or removal of such things."
[2] We consider the entire right-of-way to be a "public thing" under C.C. 454. E. g., LeBlanc v. City of New Orleans, 138 La. 243, 70 So. 212 (1915); City of New Orleans v. Board of Levee Commissioners, 164 La. 1020, 115 So. 131 (1927); M. Brown & Co. v. Duplessis, 14 La.Ann. 842 (1859); Herlitz v. City of Baton Rouge, 298 So.2d 140 (La. App.1st Cir. 1974), writ refused, 302 So.2d 16 (La.1974); City of Baton Rouge v. State National Life Ins. Co., 271 So.2d 571 (La. App.1st Cir. 1972), writ refused, 274 So.2d 709 (La.1973). See, Yiannopoulos, Civil Law of Property, §§ 33-36 (1966).
[3] In Allard v. Lobau, 2 Martin (N.S.) 317, 319, 320 (1824), plaintiff sought removal of a hut constructed by defendant on the bank of a bayou which rendered the bayou impassable at high water. In ordering the removal of the "nuisance," this court stated:

"Public things, says our code, are these, the property of which belongs to a whole nation, and the use of which is granted to all the members of the nation; of this kind are navigable rivers, seaports, roads, harbors, highways, and the beds of rivers, so long as the same is covered with water. Civil Code, 94, art. 6. Such also was the ancient law of this country.
"The use thus granted to each individual, of the things just mentioned, by the public, who are the owners, appears to us to confer the right of enjoyment in as full and complete a degree, as that which would be derived from the concession of a private proprietor, on soil that belonged to him. If there is any difference, we are unable to perceive it, and in either case we conceive, that if the party on whom this privilege is conferred, or to whom this use is accorded, be obstructed in the exercise of it, he is well founded in considering it as a private injury; for it prevents him from enjoying a personal right."
The personal right of a citizen to seek the removal of an obstruction was reaffirmed in Dudley v. Tilton, 14 La.Ann. 283, 285 (1859), where the plaintiff sued to prevent the defendant, owner of the adjoining lot, from constructing the banquette (sidewalk) in front of defendant's property at a higher elevation than the other banquettes; this alteration was without the permission of the municipal authorities. The court concluded that:
"Each citizen has then the right of action to prevent a proprietor from changing the sidewalk before his house, because it is a violation of his right of property in the use of the sidewalk that a private citizen should have the authority to alter the level of the sidewalk without permission from the municipal government."
See Parish of Jefferson v. Doody, 247 La. 839, 174 So.2d 798 (1965); Howcott v. Ruddock-Orleans Cypress Co., 146 La. 318, 83 So. 586 (1919); Sheen v. Stothart, 29 La. Ann. 630 (1877); Small v. Bonnabel, 8 La. Ann. 292 (1853); Harris v. Adams, 203 So.2d 809 (La.App.4th Cir. 1967); Cucchiara v. Robinson, 34 So.2d 84 (La.App.1st Cir. 1948).
[4] Laws 3 and 23 of the 32d Title of the Third Partida read:

"Where a man begins to erect a new building on a square, or in a street or on a common belonging to any community, without permission of the king, or of the council on whose ground he does this; then any inhabitant of said town can forbid him to proceed with said building, except where the person who forbids this to be done is a minor under fourteen years of age, or a woman. The latter cannot make such a prohibition, although they can do so when any new structure is erected on his or her own property."
"No man should build a house, or any other edifice or structure upon the squares, commons, or streets, which are the property of cities and towns or other communities; for places of this kind, which have been left for the convenience and common benefit of all who resort there, should not be appropriated or cultivated by any person for his own benefit. When anyone acts contrary to this rule, whatever he has built there should be torn down and destroyed. Where the Council of the community where this has been done agrees to retain said building for its own use, and does not desire it to be demolished, it can do so; and the income derived therefrom should be used by it just as the other common revenues which it receives.
"We also decree that no man who erects a structure in a place like those aforesaid, can, or should protect himself by alleging that he has gained the right to do so by lapse of time."
Las Siete Partidas, Translation by Scott (Commerce Clearing House, Inc. 1931).
[5] Several Louisiana cases have required the removal of private works from public places, usually as an "abatement of a nuisance;" some have cited C.C. 861. All have involved some obstruction; none discussed embarrassment. Porche v. Barrow, 134 La. 1090, 64 So. 918 (1914), (C.C. 861 cited in syllabus by court); Town of Vinton v. Lyons, 131 La. 673, 60 So. 54 (1912); Kuhl v. St. Bernard Rendering & Fertilizing Co., 117 La. 86, 41 So. 361 (1906); Bell v. Edwards, supra; Herbert v. Benson, supra; Mayor, etc. of New Orleans v. Gravier, supra; Trustees of Natchitoches v. Coe, 3 Martin (N.S.) 140 (1824); City of Baton Rouge v. State National Life Insurance Co., supra (C.C. 861 cited); Eskine v. Brown, 125 So.2d 684 (La.App.1st Cir. 1960), (C.C. 861 cited); but see Town of Madisonville v. Dendinger, 214 La. 593, 39 So.2d 252 (1948), noted at 9 La.L.Rev. 542 (1949) and 10 La.L.Rev. 175 (1950).

For a detailed discussion of articles 861 and 862 and their historical application, see, Comment, "The Encroachment of Private Works Upon Public Land in Louisiana," 23 Tul.L. Rev. 551 (1949). See, also, Comment, "The Mandatory Injunction in Louisiana," 4 La. L.Rev. 422 (1942).