558 So.2d 1326 (1990)
Cathy Kanter, wife of/and Morris BART, III
v.
Christina Longoria, wife of/and James A. WYSOCKI.
Virginia McMillian, wife of/and Walter M. VANNOY, Jr.
v.
Christina Longoria, wife of/and James A. WYSOCKI, et al.
Nos. 89-CA-1173, 89-CA-1174.
Court of Appeal of Louisiana, Fourth Circuit.
March 14, 1990.
*1327 Jonathan M. Lake, New Orleans, for Latter & Blum, Inc. and Judith Oudt, third party defendants-appellees.
Charles A. Snyder, John F. Landrum, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, for Virginia McMillian, wife of/and Walter M. Vannoy, Jr., plaintiffs-appellees.
Frederick P. Heisler, Heisler & Wysocki, New Orleans, for Christina and James A. Wysocki, defendants-appellants.
Ellen Mullins, Abbey Mack, New Orleans, for Gertrude Gardner, Inc., intervenor-appellee.
Jack M. Alltmont, Sessions, Fishman, Boisfontaine, Nathan, Winn, Butler & Barkley, New Orleans, for Cathy Kanter, wife of/and Morris Bart, plaintiffs-appellees.
Before BYRNES, WARD and BECKER, JJ.
WARD, Judge.
Mr. and Mrs. James A. Wysocki devolutively appeal adverse judgments in consolidated lawsuits for damages for breach of contracts to purchase and to sell real property.
On January 6, 1987 following negotiations over a period of several months, the Wysockis signed an agreement to purchase 2858 Chestnut Street in New Orleans, the residence of Mr. and Mrs. Walter Vannoy, Jr. Meanwhile, anticipating the purchase of the Vannoy residence, the Wysockis entered into negotiations through their real estate agent, Ms. Judith Oudt of Latter and Blum, to sell their Evelyn Court home to Mr. and Mrs. Morris Bart. Initially, in October 1986, the Wysockis and the Barts executed an agreement to sell which predicated the sale of the Evelyn Court property upon the Wysockis' purchase of the Chestnut Street property. Because the Vannoys rejected the Wysockis' October offer on the Chestnut Street property, the predication clause in the Wysocki/Bart contract nullified the agreement on the Evelyn Court property.
During the time between the failed October Wysocki/Bart agreement and the January 6, 1987 Vannoy/Wysocki contract, the Barts remained in contact with the Wysockis and Ms. Oudt in an effort to purchase Evelyn Court. Immediately, upon learning of the January 6 contract between the Vannoys and Wysockis, Mr. Bart, an attorney *1328 and real estate agent with Gertrude Gardner, prepared another offer to purchase the Evelyn Court residence. This offer contained a predication clause similar to the one in the October Wysocki/Bart contract. This subsequent offer was not accepted by the Wysockis.
Finally, on January 8, 1987, Ms. Oudt prepared and the Wysockis and Barts signed an offer to sell Evelyn Court. This agreement did not contain a predication clause conditioning the sale of the Evelyn Court residence upon the purchase of the Chestnut Street property.
The Wysockis received loan approval from Guaranty Savings and Homestead approximately 10 days prior to the March 6, 1987 act of sale date for both the Chestnut Street and Evelyn Court properties. However, Guaranty's title report on the Chestnut Street property revealed a reference to a five foot utility servitude and a three inch encroachment by the brick fence onto the sidewalk in the 1979 act of sale conveying title to the Vannoys.
Mr. Wysocki took Guaranty's title report to a local title attorney who rendered an opinion stating that the title to the Chestnut Street was "unmerchantable" citing the servitude and encroachment as title defects. Based upon this opinion, the Wysockis refused to attend the scheduled acts of sale on March 6, 1987. The Vannoys and Barts, however, appeared to tender and accept title, respectively, each executing a process verbal of default.
Two months later on May 5 the Vannoys scheduled another act of sale. The Wysockis attended but refused to accept title, again on the basis of title defects.
The Vannoys sued the Wysockis for contractual penalties and moved for summary judgment. The Wysockis answered and reconvened seeking the return of their deposit plus costs and breach of contract for failure to deliver merchantable title.
The Barts sued the Wysockis for breach of contract, return of their deposit, and an equal amount in stipulated damages, plus attorney's fees and costs.
The Wysockis third-partied their real estate agent, Ms. Judith Oudt, and her employer, Latter and Blum, Inc. for Ms. Oudt's failure to include the predication clause in the final Wysocki/Bart agreement of January 8.
Latter and Blum, Inc. and Ms. Oudt reconvened against the Wysockis seeking one-half of the real estate commission under the Evelyn Court sale contract.
Gertrude Gardner, Inc., the Barts' real estate broker, intervened in the Bart-Wysocki litigation claiming the other one-half of the real estate commission under the Evelyn Court sale contract.
Following a bench trial on the merits, the Judge granted judgment in the Vannoys' favor, ruling that the title to the Chestnut Street property was merchantable.
The Judge also ruled in favor of the Barts finding there was no vice of consent in the formation of the Wysocki/Bart contract, on which the Wysockis' contract with the Vannoys was allegedly predicated. Accordingly, the Court entered judgment against the Wysockis in favor of the Vannoys, the Barts and the real estate brokers.
In their appeal of the judgment in favor of the Vannoys, the Wysockis' first assignment of error assails the lower court's finding that title to the Chestnut Street property was merchantable. Specifically, the Wysockis argue that the reference to a five foot servitude and the encroaching fence render the title unmerchantable as "suggestive" of litigation. Young v. Stevens, 252 La. 69, 209 So.2d 25, 28 (1967).
Property has a merchantable title when it can be readily sold or mortgaged in the ordinary course of business, by reasonable persons familiar with the facts and questions of law involved. Vallery v. Belgard, 379 So.2d 1201, 1204 (La.App. 3 Cir. 1980); Langford Land Co. v. Dietzgen Corp., 352 So.2d 386, 388-389 (La.App. 4 Cir.1977).
Title does not become unmerchantable merely because litigation is possible, *1329 but only when the title is reasonably suggestive of future litigation. Langford Land, supra, 352 So.2d at 388.
Title is deemed unmerchantable only when there are outstanding rights in a third person of a substantial nature against the property, subjecting the vendee to servious litigation. Langford Land, supra, 352 So.2d at 388.
In the Langford Land case, this court relying upon earlier jurisprudence defined merchantable title as:
... one which can be readily sold or mortgaged in the ordinary course of business, to a reasonable person familiar with the facts and appraised of the question of law involved. It need not be free from every technical defect, of all suspicion, or the possibility of litigation. It must be a record title free of rational substantial doubt to the extent that a purchaser should feel that he can hold his purchase in peace without the probability of attack and with reasonable assurance that it will be readily salable on the open market. (citations omitted).

The word "merchantable" implies something less than a perfect title and permits of defects which are not reasonably liable to result in assault. 352 So.2d at 388 quoting from Roberts v. Medlock, 148 So. 474, 476 (La.App. 2 Cir.1933). (empahsis supplied)
See also White v. Batson, 317 So.2d 205, 209 (La.App. 1 Cir.1975), cert. denied 320 So.2d 915 (La.1975).
Guided by the foregoing precepts we must determine whether the Wysockis can demonstrate that the title to the Chestnut property is subject to serious future litigation.
To avoid performance under the contract, the Wysockis argue that reference to a 5 foot servitude in the act of sale from the former owners of the Chestnut Street property to the Vannoys in 1975 suggests litigation. That sale was made "subject to" the servitude. The servitude, however, was cancelled in 1966 by a Declaration of Title Change By Subdivision duly recorded in the Orleans Parish conveyance office. Nevertheless, the Wysockis maintain that the existence of an undeclared, unbargained for, servitude renders the property unmerchantable or "at least creates a suggestion of litigation, destroying merchantability." Schroeder v. Krushenski, 186 So.2d 640 (La.App. 4 Cir.1966) writ denied, 190 So.2d 230 (La.1966).
Although the Vannoys and Wysockis each introduced evidence from noted title experts, these experts expressed opinions pro and con on the merchantability issue. Therefore, guided only by jurisprudence, we disagree with the Wysockis contention that the reference to an extinguished servitude in an intervening act of sale "recreates" a servitude.
The intent to establish a servitude must clearly appear from the face of the instrument purporting to establish the servitude. Texaco Incorporated v. Newton & Rosa Smith Charitable Trust, 471 So.2d 877, 880 (La.App. 2 Cir.1985), writ denied 475 So.2d 1104 (La.1985). Any doubt as to the existence of the servitude is resolved against it. La.C.C. art. 730.
In the Texaco case, the Court noted:
The phrase `subject to' has been interpreted by Louisiana courts as the recognition of rights previously in existence rather than the creation of new rights. Patton v. Frost Lumber Industries, 176 La. 916, 147 So. 33 (1933); Hodges v. Long Bell Petroleum Company, 240 La. 198, 121 So.2d 831 (1959).
Even assuming the reference to the five foot servitude in the Vannoys' acquisition created a servitude, the Wysockis agreed in their contract with the Vannoys to purchase the property "subject to all title and zoning restrictions on record...." The Wysockis cannot assert that the servitude, however questionable, was not of record.
In addition to the utility servitude, the Wysockis also claim title is unmerchantable *1330 because a brick wall encroaches three inches onto the public sidewalk. The survey attached to the Vannoys' motion for summary judgment indicates that the encroachment does not run the length of the wall but rather arcs slightly into the sidewalk right-of-way.
In support of their position, the Wysockis rely on authorities involving encroachments which actually obstruct the public right-of-way or cases involving encroachments onto private rather than public property, which apply a separate set of rules requiring removal of even de minimis intrusions. Young v. Stevens, 252 La. 69, 209 So.2d 25, 28 (1967).
In addition, the Wysockis advance a lengthy discussion of La.C.C. arts. 861 and 862, the pre-1978 revisions of present C.C. arts. 458 and 459.
La.C.C. Art. 458 reads:
Works obstructing the public use
Works built without lawful permit on public things, including the sea, the seashore, the bottom of natural navigable waters, or on the banks of navigable rivers, that obstruct the public use may be removed at the expense of the persons who built or own them at the instance of the public authorities, or of any person residing in the state.
The owner of the works may not prevent their removal by alleging prescription or possession.
La.C.C. art. 458's predecessor codal provision (C.C. art. 861) read:
Art. 861 (1870)
Works which have been formerly built on public places, or in the beds of rivers or navigable streams, or on their banks, and which obstruct or embarrass the use of these places, rivers, streams, or their banks, may be destroyed at the expense of those who claim them, at the instance of the corporation of the place, or of any individual of full age residing in the place where they are situated.
[Second paragraph prescription provision is substantially the same.]
Essentially, the Wysockis contend that since comment (a) of art. 458 provides that the article does not change the law under old art. 861, the jurisprudence construing art. 861 plus the phrase "embarrass the use of" are relevant in our consideration of this issue.
The Wysockis cite Giardina v. Marrero Furniture Company, Inc., 310 So.2d 607 (La.1975) as authority for the position that even the slightest encroachment upon public property renders title to that property unmerchantable because a municipal body could force removal of the encroachment.
In Giardina, the Court found that "a sign about 4 feet by 8 feet in size ... located on the highway right-of-way" did obstruct the public way. 310 So.2d at 607. The Giardina court applied old C.C. art. 861. The provisions of old art. 861 allowed removal of encroachments which "obstruct", as well as those which "embarrass" the use of public ways. The court defined "embarrass the use of" in art. 861 as:
... the slightest encroachment upon public soil irrespective of the damage caused. The logical result of this interpretation is that whenever a work encroaches upon public soil, Article 861 is applicable, and the only defense available to the owner of the work is that set out in Article 862. (Comment, `The Encroachment of Private Works upon Public Land in Louisiana,' 23 Tul.L.Rev. 551, 555 (1949).
Thus, while it seems Giardina is of some support to the Wysockis' position, nevertheless the Giardina case notes a defense to a removal action in old La.C.C. art. 862, the predecessor to present C.C. art. 459.
La.C.C. art. 459 reads:
Building encroaching on public way
A building that merely encroaches on a public way without preventing its use, and which cannot be removed without causing substantial damage to its owner, shall be permitted to remain. If it is demolished from any cause, the owner *1331 shall be bound to restore to the public the part of the way upon which the building stood.
The Wysockis argue the provisions of art. 459 are of no avail to the Vannoys first, because the brick wall is not a "building" as contemplated by art. 459; second, the Vannoys have made no showing of "substantial damages" in removing the fence; and third, the fence does, in fact, prevent, albeit by only three inches, the use of the public way.
The Wysockis have not cited, nor are we able to find, any case law defining the term "building" as applied in art. 459; however, construing the term "building" in art. 2322 (imposing liability for "buildings" in "ruin") the Louisiana Supreme Court has said the term "building" refers to any structure which has some permanency; it need not be suitable for habitation. McNeely v. National Hot Rod Association, 522 So.2d 1087, 1088 (La.1988).
As for a factual demonstration of "substantial damage" in removing the fence, while the Vannoys did not present evidence of the monetary cost of eliminating the encroachment, the Wysockis declared in an opposition memorandum:
... [a]ny attempt to relocate the brick fence would absolutely affect the root system of the huge irreplaceable oak tree dominating the entire yard. Those roots have grown up against the inside of the brick fence for a distance of some twenty feet or so. Loss of that oak tree would seriously diminish the value of the entire property.
The Wysockis have judicially admitted "substantial damage" to the Vannoys by diminution of property value occasioned by the loss of an oak tree attendant to removal of the encroaching fence. C.C. art. 1853.
Finally, we agree with the Trial Judge in his conclusion that the encroachment does not "obstruct" or "embarrass" the public way. The encroachment is discernable only by survey. In addition, R.S. 9:5627 offers further protection to a challenge to the presence of the encroachment. That statutory provision imposes a two-year prescription period applicable to an action described by La.C.C. art. 459.
The Wysockis' non-availability of La.C.C. art. 459 arguments are untenable.
Additional evidence of the merchantability of the Vannoy title appears from the Wysockis' acknowledgement that Guaranty Savings Bank committed to finance the purchase based upon a title opinion rendered by the Homestead's attorney. Similarly, the Vannoys' ancestor-in-title bought the property pursuant to a survey depicting the same fence encroachment and same utility servitude, which servitude was cancelled at a later date. These transactions demonstrate the Vannoy property was "readily sold or mortgaged in the ordinary course of business, by reasonable persons familiar with the facts and questions of law involved." Vallery v. Belgard, supra.
Based on the foregoing discussions, we conclude that the Vannoys tendered merchantable title and that the Wysockis breached their agreement to purchase the Chestnut Street property.
In this next portion of their appeal, the Wysockis contend the Trial Judge committed reversible error in finding they were obligated to perform under the Wysocki/Bart agreement to sell[1] the Evelyn Court property since there was a failure of cause and an error as to cause. Particularly, the Wysockis maintain their sole "cause" in agreeing to sell Evelyn Court was their purchase of the Chestnut Street property, and argue since the title to the Chestnut Street property was unmerchantable, they were not obligated to perform under the Wysocki/Bart agreement. Since we have affirmed the lower court's judgment of merchantability of the Vannoy title, we need not reach the issue of "cause".
The Wysockis next raise the issue of their third party claim against Ms. Oudt *1332 and Latter & Blum in which they contend that their real estate agent breached her fiduciary duty in deleting the predication clause from the final Wysocki/Bart agreement.
The Wysockis asked the Trial Court to reform the contract to include a predication clause or, alternatively, to hold Latter and Blum liable for the damages occasioned by Ms. Oudt's failure to include the clause.
At trial there was extensive testimony regarding the negotiations which ultimately resulted in the January 8, 1987 contract to sell the Evelyn Court property. The Wysockis proved that in each of the contracts preceding the final contract to sell, a predication clause was inserted conditioning the sale of Evelyn Court on the purchase of the Chestnut Street property.
There was conflicting testimony over why the predication clause did not appear in the final contract. Ms. Oudt testified she obtained Mr. Wysocki's consent to omit the predication. Both Mr. and Mrs. Wysocki stated they signed the contract without reading it completely, relying on Ms. Oudt's representations that "everything is the same as in the earlier contract".
In reasons for judgment, the Trial Judge concluded that "the Wysockis voluntarily signed the agreement to sell the Evelyn Court property to the Barts without a predication clause ..." The Court went on to note that while Mr. Wysocki was an attorney and admittedly not versed in real estate law, "he should have been or should be deemed to have been more careful in signing the contract respecting the Evelyn Court property."
We agree with the Court's finding vis-a-vis the Wysockis, including its comment regarding the seemingly less than adequate manner of Ms. Oudt's representation of the Wysockis' interest. Nevertheless, in Louisiana National Leasing Corp. v. ADF Service, Inc., refusing to hold a waiver of implied warranties ineffective, the Louisiana Supreme Court stated:
It must be presumed that persons engaged in business, as the [lessees] in this case, one of whom is an attorney, were aware of the contents of the lease agreement which they signed ... that they did not avail themselves of the opportunity to carefully read the lease which they signed is not a cause to annul the waiver. 377 So.2d 92, 96 (La.1979) (emphasis added).
See also Aetna Casualty & Surety Co. v. Stewart Investments, Inc., 348 So.2d 1292 (La.App. 4 Cir.1977). The Trial Court did not err in dismissing the third party claim.
Thus, having affirmed the lower court findings of merchantability of title to the Chestnut Street property and non-breach of a fiduciary duty, we also affirm the award of real estate commissions to Latter and Blum, Inc. and Gertrude Gardner, Inc.
However, we note and correct an error in the judgment against the Wysockis in favor of the Barts. The Trial Court ordered the Wysockis to pay the Barts twice the amount of the Bart's deposit. While this is the correct amount of damages according to the terms of the Wysocki/Bart agreement, the Wysockis should have been credited by the full amount of the deposit ordered returned to the Barts. The Trial Judge only credited the damage amount by the cash portion of the deposit returned. He then "cancelled" the Bart's promissory note component of the deposit. This promissory note amount should have been credited against the total damage amount owed to the Barts. Therefore, we amend the judgment to reflect this correction but in all other respects, affirm the judgment of the Trial Court.
In spite of appellate disapproval of piece meal appeals, the Trial Court reserved a determination on the assessment of legal fees and costs until completion of this appeal. To that extent the Trial Judge erred. Because this reservation of a decision on these issues, was not occasioned by any of trial counsel, the matter is remanded for a determination of those issues.
AMENDED, AFFIRMED AS AMENDED AND REMANDED.
NOTES
[1] The Barts originally demanded specific performance as provided for in the agreement but later dropped this demand, seeking instead contractual damages and costs.