McCLENDON, J.
LA landowner seeks review of a trial court judgment that allowed its neighboring landowner’s pier “to remain as constructed,” contending that the neighboring landowner’s pier has limited its waterway access and has caused it damage. In answer to the appeal, the neighboring landowner seeks review of the trial court judgment to the extent it denied his re-conventional demand seeking recovery for damages to his property. For the reasons that follow, we affirm that portion of the judgment that dismissed the recon-ventional demand, but remand the matter for further consideration of issues regarding the pier, as discussed in more detail below.
FACTS AND PROCEDURAL HISTORY
This action was filed by The Cottonport Bank (“Cottonport”) on June 12, 2006, seeking damages against Raymond Garrett for trespass and mandatory injunction, loss of use and enjoyment, and for the removal of encroachments. Cottonport and Mr. Garrett own adjacent parcels of land on False River in New Roads, Louisiana.
In its petition, Cottonport alleged that it hired a contracting firm to build a bulkhead on its property in November 2005, at which time it received permission from Mr. Garrett to remove a fence separating the two properties. Cottonport alleged that when construction of the bulkhead was completed, Mr. Garrett moved the location of the fence beyond the property line, thereby encroaching on Cottonport’s property.
Also, in December 2005, Mr. Garrett constructed a pier near the property line. *434 Mr. Garrett, in determining the boundaries for his pier, used posts from a prior pier erected by a previous owner in 1959. The pier forms a “T” configuration, with the stem extending out solely from Mr. Garrett’s property. One arm of the T-shaped pier, however, extends beyond an extension of the property line, anywhere from four and half feet to nearly six feet (depending on which survey is used) beyond the extension of the property line into the lake and in front of Cottonport’s lot. Cot-tonport contends that the pier’s westerly Isextension in front of its lot has the effect of limiting Cottonport’s access to False River and has caused it damage. Cotton-port requested an injunction, asking the court to order removal of that portion of the pier which extends beyond the extension of the property line, to have the court fix the property line, and for damages.
Mr. Garrett filed a reconventional demand against Cottonport, alleging that Cottonport allowed its property to deteriorate to such a state of disrepair that it caused damages to Mr. Garrett’s property. Mr. Garrett sought monetary damages “in an amount to be determined by [the] court.”
Following trial, the court fixed the boundary line between the parties in accordance with a survey performed by Cle-tus Langlois. The court also ordered Mr. Garrett to , remove the fence between the two properties and construct a new fence in accord with the boundary established by the Langlois survey. The trial court, however, allowed Mr. Garrett’s pier “to remain as constructed.” In so ruling, the trial court concluded that the portion of the pier at issue was constructed on state property, as opposed to property belonging to Cot-tonport.[1] The trial court rejected Mr. Garrett’s reconventional demand.
Subsequently, Cottonport filed a motion for new trial “to fully resolve the issue of the pier.” Therein, Cottonport urged that the State was a party needed for just adjudication on the pier issue and that the State could be named a party defendant if a new trial were granted. The trial court denied the Cottonport’s motion for new trial.
Cottonport has appealed, assigning the following errors:
1) Whether the Trial Court should have ordered the removal of a portion of the Garrett pier under Article 670 or an abuse of right theory.
2) Whether the Trial Court should have ordered a new trial to include the State of Louisiana as a party defendant.
|4Mr. Garrett has answered the appeal, asserting that the trial court erred in failing to award damages as prayed for in his reconventional demand.
DISCUSSION
Cottonport avers that while Mr. Garrett’s pier is built almost entirely on State property, the State does not regulate pier construction intended for private use along False River. Rather, Cottonport notes that in 2002, the Pointe Coupee Parish Police Jury enacted an ordinance for the regulation of pier and other construction along False River. Cottonport asserts that the ordinance would have required Mr. Garrett to remove that portion of the pier in dispute. Although Cottonport con *435 cedes that the ordinance did not take effect until October 2007,[2] it asserts that the ordinance presents a clear statement of public policy that is intended to prohibit the actions undertaken by Mr. Garrett.
Nevertheless, Cottonport contends that it is entitled to injunctive relief based on LSA-C.C. arts. 667 and 668. Louisiana Civil Code article 667 provides that although an owner may do with his estate whatever he pleases, he cannot make any work thereon which may deprive his neighbor of the liberty of enjoying his own estate, or which may cause him damage. Louisiana Civil Code article 668 provides that although one is not at liberty to perform work by which his neighbor’s buildings may be damaged, every owner is free to do on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.
These obligations of vicinage are legal servitudes imposed on the owner of property. Rodrigue v. Copeland, 475 So.2d 1071, 1077 (La.1985). The portion of the pier at issue, however, is on state-owned property as opposed to property owned by Mr. Garrett or Cottonport. Accordingly, LSA-CC. arts. 667 and 668 do not apply under the facts presented herein.
| ¿Cottonport also contends that Mr. Garrett violated Louisiana’s abuse of rights doctrine. In Truschinger v. Pale, 513 So.2d 1151 (La.1987), the court explained:
The Abuse of Rights doctrine is a civilian concept which is applied only in limited circumstances because its application renders unenforceable one’s otherwise judicially protected rights. In Morse v. J. Ray McDermott & Co., 344 So.2d 1353 (La.1977), this court recognized the Abuse of Rights doctrine. There, we held that an employer could not defeat his obligation to pay an employee the remaining portions of the employee’s compensation by terminating his employment without cause. Since that case, neither this court nor the courts of appeal have applied- the doctrine.
The Abuse of Rights doctrine has been applied only when one of the following conditions is met:
(1) if the predominant motive for it was to cause harm;
(2) if there was no serious or legitimate motive for refusing;
(3) if the exercise of the right to refuse is against moral rules, good faith, or elementary fairness;
(4) if the right to refuse is exercised for a purpose other than that for which it is granted.
Illinois Central Gulf Railroad Co. v. International Harvester Co., [368 So.2d 1009, 1013 (La.1979) ]; Cueto-Rua, Abuse of Rights, 35 La.L.Rev. 965 (1975).
Trusehinger, 513 So.2d at 1154.
Louisiana courts, however, have not extended the doctrine beyond cases involving certain contractual and/or fiduciary relationships. See Morse, 344 So.2d at 1367-68, Illinois Central Gulf Railroad Co., 368 So.2d at 1013-15, Truschinger, 513 So.2d at 1154-55, and McInnis v. McInnis, 618 So.2d 672, 676 (La.App. 2 Cir.1993)(“More importantly, cases dealing with this civilian concept typically concern the limited situation involving the holder of a contractual right and a litigant against whom that *436 right has been directly but nonetheless, it is alleged, harmfully exercised.” (Emphasis omitted.))[3] Under these circumstances, we find no error in the trial court declining to extend the doctrine beyond its current application by the courts.
| f,The trial court, in denying Cotton-port’s request, did so because the portion of the pier at issue was constructed on state property. Neither the parties nor the trial court addressed LSA-C.C. art. 458,[4] which provides, in pertinent part:
Works built without lawful permit on public things, including the sea, the seashore, and the bottom of natural navigable waters, or on the banks of navigable rivers, that obstruct the public use may be removed at the expense of the persons who built or own them at the instance of the public authorities, or of any person residing in the state.[5]
Citizens of this state have a right of action coincidental with that of the governing authority to sue for the removal of a structure which physically obstructs the citizens’ right of use of public land. Worthen v. DeLong, 99-1149, p. 5 (La.App. 1 Cir. 6/23/00), 763 So.2d 820, 824.
Louisiana Code of Civil Procedure article 2164 provides that “[t]he appellate court shall render any judgment which is just, legal, and proper upon the record on appeal.” “The purpose of this article is to give the appellate court complete freedom to do justice on the record irrespective of whether a particular legal point or theory was made, argued, or passed on by the court below.” LSA-C.C.P. art. 2164 comment (a).
Cottonport has not asserted that the entirety of the pier obstructed public use. Rather, Cottonport urged that the portion of Mr. Garrett’s pier’s westerly extension in front of its lot has limited Cottonport’s access to False River and has caused it damage. An owner of land adjacent to public property has been recognized as possessing a right, separate from the ordinary citizen, to sue to remove encroachments on public property which cause harm peculiar to him. Giardina v. Marrero Furniture Co., Inc., 310 So.2d 607, 610-11 (La.1975). Thus, under the reasoning in Giardina, it is clear that Cot-tonport had a right to |7bring an action.[6] Moreover, the remedy sought herein is limited to that portion of the pier that extends over the imaginary boundary line between the two properties. Cf. Bell v. Edwards, 37 La.Ann. 475 (1885) (“As the plaintiff has shown no legal interest in asking relief against the laying and use of the track or switch which is not in front of his property, we do not think he can be heard to champion the rights of those who do not complain.”)
Pursuant to LSA-C.C.P. art. 2164, courts of appeal have the power to remand a case for the introduction of additional evidence if grave injustice might result from failure to do so. Such a remand is warranted only when the new evidence is likely to affect the outcome of the case. *437 However, the power to remand on this basis should be exercised sparingly. Whether a particular case is remanded is a matter over which the court has much discretion and is governed by the particular facts and circumstances in each case. Bell v. Kristi 05-1500 (La.App. 1 Cir. 6/9/06), 938 So.2d 745, 748.
We note that a private citizen can only avail himself of LSA-C.C. art. 458 when he can show there is a physical obstruction of the citizen’s right of use of public land. See Giardina, 310 So.2d at 612.[7] Moreover, a building that merely encroaches on a public way without preventing its use, and which cannot be removed without causing substantial damage to its owner, shall be permitted to remain. LSA-C.C. art. 459.
In the instant case, although Cot-tonport introduced evidence regarding how Mr. Garrett’s pier impacted the plans for its waterfront property, there is scant evidence in the record regarding how Mr. Garrett’s pier obstructed Cottonport’s and/or public’s right of use of False River. Additionally, should it be proven that the pier is merely an encroachment that does not prevent use, ^nothing in the record reflects whether the portion of the pier at issue could be removed without causing substantial damage to Mr. Garrett. Therefore, under the particular facts of this case, we conclude that a remand is appropriate to afford the parties an opportunity to address these issues.
In answer to the appeal, Mr. Garrett urges that the trial court erred in dismissing his reconventional demand. He asserts that Cottonport is liable for damages because Cottonport’s building caused damage to his building. See LSA-C.C. arts. 660 and 2322.[8] Specifically, Mr. Garrett notes that the gutter on Cottonport’s building crosses the property boundary line and rests on his building. Eric New-son, who had experience in installation of flat roofs, testified that the water from Cottonport’s roof was draining directly onto Mr. Garrett’s flat roof and caused the damage to Mr. Garrett’s roof.
While it may have been apparent that Cottonport’s roof crossed the property line *438 and drained onto Mr. Garrett’s roof, we cannot find that the trial court erred in concluding that Mr. Garrett failed to meet his burden of showing that Cottonport knew or, in the exercise of reasonable care, should have known that the condition was causing damage to Mr. Garrett’s building. Accordingly, Mr. Garrett’s assignment of error is without merit.
| aCONCLUSION
For the foregoing reasons, we vacate the portion of the judgment that allowed Mr. Garrett’s pier to remain as constructed (and inferentially denied Cottonport’s request for injunctive relief and damages). We remand this matter to the trial court for further proceedings consistent with this opinion regarding Cottonport’s claims related to that portion of Mr. Garrett’s pier which protrudes beyond the imaginary boundary between the properties. The judgment is affirmed to the extent it dismissed Mr. Garrett’s reconventional demand. The parties are to pay their own respective costs of appeal.
AFFIRMED IN PART; VACATED IN PART; AND REMANDED.

. Louisiana Revised Statutes 9:1110 provides:
The title of the owners of land adjacent to that body of water in Pointe Coupee Parish known as False River shall extend to fifteen feet above mean sea level. The boundary line formed at fifteen feet above mean sea level marks the division between land owned by the state and land owned by private persons along the banks of False River.

. Cottonport notes that the ordinance could not go into effect until approved by the State of Louisiana.

. We recognize that foreign jurisdictions have applied the abuse of rights doctrine in broader contexts. See Cueto-Rua, Abuse of Rights, 35 La.LRev. 965 (1975).

. The parties, pursuant to an order from this court, have addressed article 458 on appeal.

. The parties do not dispute that False River is navigable. See Chevron U.S.A., Inc. v. Lorio, 496 So.2d 611, 615 (La.App. 4 Cir.) writ denied, 498 So.2d 754 (La.1986) (citing Sicard v. Chitz, 13 La. 111 (1839)). The parties also do not dispute that permits were not obtained prior to construction of the pier.

.We need not decide whether any person residing in the state would have a similar right. However, we recognize that the State need not be a party to the action.

. As recognized in Giardina, LSA-C.C. art. 861 (the predecessor to LSA-C.C. art. 458), in addition to requiring removal of any works that obstructed public places, also required removal of any works that "embarrass the use” of public places. 310 So.2d at 612. The latter provision was deleted when article 861 was redesignated as article 485, See 1978 La. Acts. No. 728, § 1, effective Jan. 1, 1979. However, the revision comments indicate that it did not change the law. See LSA-C.C. art. 458, comment a.

. Louisiana Civil Code article 660 provides:
The owner is bound to keep his buildings in repair so that neither their fall nor that of any part of their materials may cause damage to a neighbor or to a passerby. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
Louisiana Civil Code article 2322 provides:
The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.