DORE, Judge.
This is a suit involving the respective cattle grazing rights of plaintiff, Charnie H. Johnson, on the one hand, and his brother and nephew, respectively, the defendants, John M. Johnson and Beltran Johnson, on the other hand, on approximately 86,000 acres of unfenced land belonging to the United States of America and situated in the Parish of Vernon, Louisiana.
In his petition the plaintiff alleges that with the full permission of the United States Government he has been grazing his cattle on the tract of land in question which he specifically described in the petition; and, “that on or about February 1, 1950, the said John M. Johnson and Beltran Johnson, illegally and maliciously, and without any right or authority to do so, drove petitioner’s stock from the above described land and refused to allow petitioner’s stock to graze and water thereon”. The petitioner alleges further that the same act occurred on February 27, 1950, and further that petitioner has been informed that John M. Johnson and Beltran Johnson would in the future prevent petitioner’s stock from grazing and watering on the said land. The petitioner further alleges that said defendants have no right or authority in law to molest or interfere with petitioner’s stock while the same is upon the lands owned by the United States, and that petitioner, by' the aforesaid acts of the defendants, is being deprived of valuable food and water needed for the welfare of his stock; that he is without any adequate remedy at law except through the issuance of an injunction and that unless he be permitted to graze and water his stock upon the said lands, he will sustain an irreparable injury. Petitioner prays for an immediate temporary restraining order and an order to show cause on a day and hour to be fixed by the court why a preliminary injunction should not issue; enjoining, restraining and prohibiting the said defendants and their agents from in any manner interfering with or molesting petitioner’s stock, particularly while the said stock is upon the said lands.
*492 Upon this petition an order was issued by the court restraining the defendants as prayed for upon, plaintiff furnishing bond in-the sum of $500, and a rule was also issued ordering the defendants to show cause on March 13, 1950, at 10:00 o’clock, A.M., why a preliminary injunction should not be granted. The record shows that the bond required was filed on March 13, 1950, the same date as the order and that on that date the temporary restraining order was issued and the temporary order was thereafter continued to March 20, 1950, and the rule to show cause was also continued to that date.
'On March 11, 1950, motions were filed by the two defendants to dissolve the temporary restraining order on the ground that said order does not disclose what is the immediate and irreparable loss or damage that plaintiff alleges he will suffer if such order is not dissolved, and further that plaintiff does not set forth that the threatened injury could not be compensated in money. These motions were also set for hearing March 20, 1950, the same as the rule to show cause.
On March 20, 1950, upon the -case being taken up and tried, writs of preliminary injunction were ordered issued against the defendants and also against plaintiff, upon each party furnishing bond for the sum of $500.
On March 18, 1950, the defendants filed their answer which amounts to a general denial of the allegations of plaintiff’s petition and which in further answer avers that the tract of land belonging to the United States Government is divided in two parts by Bundick Creek and that there exists open range on the west side of said creek and on the east side of said creek, and that plaintiff resides on the west side and has always grazed his cattle on the west side and that the defendants reside on the east side and have always grazed their cattle thereon; that the defendants for the care and welfare of their cattle spread corn and other feed and salt blocks on said east side of the government lands; and that the plaintiff drove his herd of cattle across the creek to the east side where defendants’ cattle were grazing and being fed, and that he mingled his cattle with the cattle of defendants; that for self protection the defendants cut plaintiff’s cattle -out of their herd and turned them back and drove them away from the feed; that plaintiff had no legal or equitable -right to drive his -cattle into the range customarily and traditionally used by defendants for grazing their cattle or to have them feed upon the feed placed out upon the range by defendants for their own cattle.
The answer prays that there be judgment in favor of defendants, rejecting plaintiff’s demands all at his costs and, further, that the plaintiff be restrained and enjoined from driving his stock into the range used by defendants and from driving his stock among and mingling them with the herds of the defendants and from feeding them off the feed placed by defendants for their own stock.
After trial on the merits, on June 22, 1950, the trial judge rendered judgment in favor of plaintiff and against the defendants recognizing the right of plaintiff to graze and water his stock upon the lands owned by the United States as described in the judgment, and perpetuating the temporary writ of injunction heretofore issued, forever enjoining and restraining the defendants and their -agents from interfering with, or molesting, the stock of plaintiff, and particularly while the said stock is upon the said land, or from driving the stock of plaintiff from said lands; “except defendants will have the right to ‘cut out’ any stock from their herd while feeding, branding, or dipping their stock.”
The court further granted judgment in favor of the defendants and against the plaintiff forever enjoining and restraining the plaintiff from driving his stock among and mingling them with the herds of defendants and from feeding them off the feed placed out by defendants for their own stock.
The judgment further orders that plaintiff shall pay all costs of his filings, his witnesses, and one-half of the court reporter charges, and that defendants shall pay all costs of their filings, their witnesses, and one-half of the court reporter charges.
*493 On June 29, 1950, as shown by "the minutes of the court, orders of both suspensive and devolutive appeal were granted to the plaintiff on or before July 25, 1950. The devolutive appeal bond was fixed in the amount of $250 and the suspensive appeal bond was fixed in the amount of $1,000. The bonds were filed on July 1, 1950. Thereafter, on petition of plaintiff and appellant to this court, accompanied by an affidavit of the Clerk of the District Court showing that the transcript could not be completed by July 25, 1950, an order was signed on July 11, 1950, extending the return day to this court to August 25, 1950.
The defendants filed a motion to dismiss the appeal on the ground that the plaintiff appellant has attempted to perfect the appeal without obtaining an order of appeal from the trial judge, Hon. William H. Ponder. It is admitted that Judge Edwin M. Fraser, one of the judges of said District Court, at a special session of the court on June 29, 1950, granted an order of appeal as set forth in the minutes.
The motion to dismiss is based on the further fact that on July 6, 1950, as shown by the minutes of the court, the order of appeal was recalled, annulled and set aside by Judge Fraser for oral reasons assigned.
At the outset, it is our opinion that the motion to dismiss Can be disposed of by the mere statement that the appeal was-perfected by reason of the order of June 29, 1950, and the filing of the bonds required by said order on July 1, 1950. The subsequent order of July 6, 1950, is a nullity for the reason that the lower court had no longer jurisdiction of the subject matter. The order for the appeal was granted by one of the judges of the said court and is therefore legal.
The defendants also answered the appeal, reserving their rights under the motion to dismiss, praying that the judgment in favor of plaintiff-appellant against the defendants-appellees be reversed and that the judgment in favor of the defendants-appellees and against plaintiff-appellant be affirmed, all at the cost of plaintiff-appellant in both courts.
The trial judge has not favored us with written reasons for the judgment, but the facts appear to be well established as follows :
The tract of land in question is admittedly owned by the United States Government and is unfenced, and, as testified by the United States Forester in charge of the tract, is open to any one for the grazing of cattle or other animals. It is also shown that the tract of land is divided in two parts by Bundick Creek, one part being on the northeast side of said creek, and the other oh the southwest side. It is admitted by the plaintiff that he drove his cattle from the southwest side, where he resided, to the northeast side, where the defendants reside, for the simple reason that the grass was greener, in his opinion, on that side. It appears that, for the purpose of reforestation of several hundred acres on the east side, it was burned and that on this “.burn” fresh green grass grew, making that area attractive not only to the defendants who were already there but also to plaintiff. The defendants contend that the plaintiff had always heretofore grazed his cattle on the west side of the creek and that they, the defendants, had for many years past grazed their cattle on the east side and that to maintain the cattle, when the grass was sparse, they supplemented th.e grazing by spreading corn and oats on the “burn” or wherever the cattle happened to be on this government land. The defendants deny that they ever drove plaintiff’s cattle from the east side to the west side of the creek; but they admit that they did cut plaintiff’s cattle out of their herds' when they mingled with their herds and ate the feed spread by the defendants and used the salt blocks placed by the defendants for the use of their own cattle. Defendant Beltran Johnson even admits that he drove plaintiff’s cattle as far as the creek, although denying that he ever drove them across the creek.
On these facts it appears to us that the main questions to be determined are, first, whether or not the plaintiff had the right to actually drive his cattle to any certain area, including the east side of the creek, for the purpose of grazing. No *494 jurisprudence has been cited to us on that question, but it seems reasonable to say that any individual had the full right of allowing his cattle to go on any part of this 86,000 acre tract, or even to drive them to any part thereof, without any molestation or interference from any other individual, and that all individuals have the same and equal rights of grazing their cattle on said land.
The second question to consider is whether or not this right to graze cattle also gave an individual the right to spread feed and salt blocks on the government land and to thereby deprive any other individual from grazing their cattle where such feed and salt blocks were placed. Again we have no jurisprudence cited to us on the question. However, if the grazing privilege should include the additional right of, in effect, preempting the certain area on the tract (which could be the whole tract for that matter) by spreading feed and salt blocks, it would seem that the whole idea of free and open grazing would be defeated. It seems reasonable to say that the right of free grazing does not include the use of said land for any other purpose, and that as contended by the plaintiff, any one who spreads feed or salt blocks on the open range does so at the risk that it will be consumed by any cattle which are grazing on that open range. It is our opinion that a cattle owner who desires to supplement the grazing of his cattle by feeding them should do so on his own private land and that he should not be permitted to, in effect, appropriate for his private use the public grazing lands. We are impressed by the following quotation of the plaintiff’s brief:
“This 86,000 acres in this tract is land belonging to the Sovereign United States of America, and, of course, all of the citizens of the United States of America have a perfect right to use this property subject to the laws and regulations. This 86,000 acres of land, being public property, comes within the purview of Article 453 of our Civil Code, which declares: ‘453 (444) (N 538), Public things defined — Use.— Pubic things are those, the property of which is vested in a whole nation, and the use of which is allowed to all the members of the nation: of this kind are navigable rivers, seaports, roadsteads and harbors, highways and the beds of rivers, as long as the same are covered with water.’
“Article 453 of the Civil Code has probably not been changed since the Civil Code was first enacted in 1825, and, of course, as originally written it only provided for the usages of property contemplated at that time. Hence, as an illustration of the rights of the citizens to use the public property we are given the illustration that ‘ * * * every man has a right freely to fish in the rivers, ports, roadsteads, and harbors.’ ‘Freely’ means without restraint from his fellow citizen and it most certainly does mean that every man has the right to freely, use the public property for the natural use which the property was intended, and that his fellow citizen does not have the right to impede or obstruct his use of the property capriciously. This Article plainly states the ‘use of which is allowed to all the members of the nation’, and this use is given to the citizens of the nation.
“In State ex rel. Saint, Attorney General v. Timothy, [166 La. 738] 117 So, 812, 814, we find a case which is analogous to the case at bar. In this Timothy case, Timothy owned and operated, for his personal profit, a large public bath-house rested upon piling driven in the bed of Lake Pontchartrain about three hundred feet from the shoreline. The portion of the lakebed occupied by the bathhouse was being appropriated by Timothy to his own exclusive use, and the State of Louisiana, through the Attorney General, filed suit against Timothy seeking the abatement of the trespass maintained by Timothy, ordered the demolishment of the bathhouse, and forever enjoining the further use of the structure by Timothy. In the lower court there was judgment for the State of Louisiana and against Timothy for the relief sought, and Timothy appealed.
“The Supreme Court, through Justice Brunot, decided this case in favor of the State of Louisiana upon the theory that the property therein involved was common property and that no individual had the *495 right to usurp the use of the common property to the prejudice of his fellow citizens. In deciding this case, the Supreme Court called attention to Article 450, 451, 452, and 453, and then said: ‘The title to the waters and bed of Lake Pontchartrain being in the state, it seems to us immaterial whether the appropriation of a part of the lake bed by the defendant to his exclusive use is a purpresture or a trespass upon the public domain. In either event the state may properly, on the relation of the Attorney General, sue to abate the purpresture or to eject the trespasser from its property.’
“The reason behind the decision in this Timothy case is. that the use of public property in the State is given to all of the citizens of the State and that no one citizen cm oust the other citizens from the full enjoyment of the public property.”
In conclusion, in view of the above considerations, it is our opinion that the judgment should be amended so as to recognize the right of the plaintiff, Charnie H. Johnson, to graze and water his cattle and stock upon the lands of the United States described in his petition and in the judgment of the trial court, and enjoining the defendants, John M. Johnson and Bel-tran Johnson, from in any way molesting or interfering with the cattle and stock of plaintiff particularly while they are being grazed or watered on said government lands, and that the judgment in favor of the defendants be reversed and annulled. The only injunctive relief prayed for by the defendants is to prevent the plaintiff from driving his cattle across the creek to greener pastures and to prevent the plaintiff from mingling his cattle with those of defendants and to prevent him from thus using feed and salt blocks placed on the range by defendants for their own cattle. As expressed hereinabove we do not believe that the defendants have any right to prevent the driving of cattle by an owner to any particular area of the land in question, nor do we believe that they have the right of using the said land for the private use of spreading feed and salt thereon and there is no showing that the plaintiff in any way deliberately caused his cattle to mingle with those of defendants. Moreover, there is no showing that the mingling of cattle on the open range is injurious to any one, or that the right of free grazing gives the additional right to any one individual of having his cattle isolated from those of another.
For these reasons, it is decreed that the judgment below in favor of the defendants be reversed, annulled and set aside and that the judgment in favor of the plaintiff, Charnie H. Johnson, be amended by deleting therefrom the part which states “except defendants will have the right to ‘cut out’ any stock from their herd while feeding, branding or dipping their stock,” and that as thus amended the said judgment is affirmed.
The costs before this court to be paid by the defendants-appellees and all other costs to be paid in accordance with the judgment below.