763 So.2d 820 (2000)
Mark S. WORTHEN and Helen L. Worthen
v.
Charles DeLONG, Junalise Delong, and City/Parish of East Baton Rouge.
No. 99 CA 1149.
Court of Appeal of Louisiana, First Circuit.
June 23, 2000.
*821 Brett Furr, Baton Rouge, Counsel for AppellantMark and Helen Worthen.
Charles A. Schutte, Jr., Baton Rouge, Counsel for AppelleeCharles and Junalise DeLong.
Larry Book, Baton Rouge, Counsel for AppelleeCity of Baton Rouge Parish of East Baton Rouge.
Before: THIBODEAUX, SAUNDERS and AMY Judges Pro Tempore by special appointment of the Louisiana Supreme Court.
AMY, Judge Pro Tem.
The defendants/landowners sought to build a fence on a parcel of property that had been dedicated to the city of Baton Rouge as a public right-of-way. The plaintiffs, owners of certain tracts of land which adjoin the right of way, filed suit against the defendant seeking a judgment declaring that the right-of-way in favor of the city was still in effect, enjoining the defendants from continuing any further construction of a fence in the right-of-way, and ordering the defendants to remove the existing portion of the fence and restore the ground at their expense. The trial court granted the declaratory judgment, but denied the plaintiffs' request for a permanent injunction. The plaintiffs appeal the trial court's judgment insofar as it denies their request for injunctive relief. For the following reasons, we reverse and remand with instructions.

*822 Factual and Procedural Background
This dispute involves the defendants', Charles and Junalise DeLong, right to construct a fence on a certain parcel of property in the "College Town Subdivision" of the City of Baton Rouge. A plat of the College Town Subdivision (subdivision) was filed and recorded into the notarial records of East Baton Rouge Parish on November 23, 1923. The plat indicates that a right-of-way, labeled "Princeton Avenue," was dedicated as a sixty-foot-wide public street proceeding north to south between Square 13 and Square 14 of the subdivision. The right-of-way is intersected by Yale Avenue to the north and Harvard Avenue to the south. To date, this right-of-way remains undeveloped due primarily to the fact that a majority of the right-of-way, as well as a substantial portion of Square 14, has become submerged in College Lake. However, the city has maintained a sewer line within the right-of-way and in 1996 constructed a sewer lift station at the southernmost point near Harvard Avenue.
In 1986, the Baton Rouge Metro Council enacted Ordinance 8111, which conditionally revoked the dedication of the Princeton Avenue right-of-way. Section 1 of Ordinance 8111 stated:
Section 1. The dedication of that unimproved portion of Princeton Avenue located between Harvard Avenue on the south and Yale Avenue on the [n]orth, in College Town Subdivision, be and it is hereby revoked and set aside as no longer needed for public purposes, as provided under the provisions of Louisiana Revised Statute 48:701, et seq., conditioned upon the legal dedication by the property owner of servitudes required for maintenance of the sewer line and other public purposes in this area, all as determined by the Department of Public Works of the City of Baton Rouge and Parish of East Baton Rouge.
In 1993, the DeLongs purchased Lot 8 and the unsubmerged portion of Lot 7 of Square 14, which adjoins the right-of-way on the east. The Worthens own Lots 1, 2, and 4 of Square 13 which adjoins the right-of-way on the west. The Worthens also reside in the residence owned by Philip L. Benfield which sits on Lots 3 and 6 of Square 13. The right-of-way separates Lots 1 and 2 of Square 13 from Lots 7 and 8 of Square 14. Further north, the right-of-way separates Lots 3 and 4 of Square 13 from the bank of College Lake which encroaches on approximately one-half of the right-of-way at that point.
After purchasing the property, the DeLongs sought, and on May 31, 1995, obtained, a permit to construct a fence away from their property line and along the middle of the right-of-way. At the time the permit was issued, the Baton Rouge Department of Public Works (DPW) advised the DeLongs of the projected construction of a sewer lift station on the portion of the right-of-way adjoining the DeLongs' property. Given this notice, the DeLongs suspended the construction of the fence until the city completed the sewer lift station. The sewer lift station was finally completed in the fall of 1996. The pumps for the sewer lift station were completely on the DeLongs' side of the midline of the right-of-way and the force main for the lift station exits east on the Worthens' side of the midline of the right-of-way and then turns south to connect to the sewer line at Harvard Avenue.
Upon completion of the lift station, the DeLongs decided to proceed with the construction of the fence and proposed to the city that they would construct the fence around the lift station. The plan for the construction of the fence was submitted to DPW, to which it did not object. The DeLongs began construction of the fence on November 15, 1996. Thereafter, on November 20, the DeLongs received a letter from Mr. Steve Bailey, a Commercial Planning Analyst for DPW, advising them that the right-of-way had not been officially revoked by Ordinance 8111 and that the permit had been issued in error. Mr. Bailey advised the DeLongs that the fence *823 could still be constructed if they would grant a thirty-foot servitude and the Worthens granted a fifteen-foot servitude to the city in order to maintain the sewer lift station. He also stated that if the Worthens did not execute the servitude, the city would allow the DeLongs to fence thirty feet of the right-of-way if they would execute a Hold Harmless Agreement. Upon receipt of the letter, the DeLongs ceased construction on the permanent fence, but did place wire fencing around the existing fencepost as a safety precaution.
On February 27, 1997, the Worthens filed suit seeking a declaratory judgment and permanent injunction naming the DeLongs and the City/Parish of East Baton Rouge as defendants. The Worthens sought a declaratory judgment arguing that the Princeton Avenue right-of-way had not been revoked and was still in existence. Additionally, the Worthens sought to have a judgment rendered which permanently enjoined the DeLongs from constructing a fence in the right-of-way and ordering them to remove the existing fence and repair the ground at their costs. This matter proceeded to a trial on the merits on October 20, 1998. After hearing the arguments presented and receiving the submitted evidence, the trial court entered a judgment declaring that the Princeton Avenue right-of-way had not been revoked and remained public property. However, the trial court denied the Worthens' request for a permanent injunction. The court stated that although the fence did not belong on the property, there was "no good reason to remove it." The trial court determined that the fence could be constructed in such a manner that it would not obstruct the public's use and that if, in the future, the DPW needed access to the fenced property, the DeLongs could be forced to remove the fence at that time. Thereafter, the Worthens filed this appeal asserting error in the trial court's decision to deny their request for injunctive relief.[1]

Discussion of the Merits
The issue presented to this court is whether the trial court erred in failing to grant the plaintiffs' request for a permanent injunction to enjoin the defendants from constructing a fence on a public right-of-way. We observe that "[t]he issuance of a preliminary injunction lies within the discretion of the trial court, but that discretion is reviewable if erroneously exercised." Jurisich v. Jenkins, 97-1870, p. 6 (La.App. 1 Cir. 9/25/98); 722 So.2d 1008, 1013, writ granted on other grounds, 99-76 (La.3/12/99); 739 So.2d 212.

Public Thing
The trial court rendered a declaratory judgment finding that the dedication of the Princeton Avenue right-of-way to the public had not been revoked and, therefore, was still in existence. In their briefs to this court, neither party disputes that the necessary servitudes have not been executed to fulfill the condition set forth in Ordinance 8111, therefore, in turn, there has been no formal revocation of the dedication of the right-of-way to the city. Thus, we *824 begin our analysis with the determination that the parcel of land, dedicated as a right-of-way, is a public thing. See La. Civ .Code art. 450.

Use of Public Things
Members of the general public are afforded a right to participate in the public use of public land, which is neither a personal right nor a real right, but an incident of its personality.[2]See La.Civ.Code art. 452. However, this right is subject to compliance with the applicable laws and regulations of the state and its political subdivisions which are enacted to safeguard the public use in the interest of all. Id. Louisiana Civil Code Article 458 grants to a citizen of the state a right of action coincidental with that of the governing authority to sue for the removal of structures which physically obstruct the citizen's right of use. See Giardina v. Marrero Furniture, Co., 310 So.2d 607 (La.1975); Parish of Jefferson v. Doody, 247 La. 839, 174 So.2d 798 (1965); Dudley v. Tilton, 14 La.Ann. 283 (1859); Allard v. Lobau, 2 Martin 317 (1824); Johnson v. Johnson, 50 So.2d 490 (La.App. 1 Cir.1951); Cucchiara v. Robinson, 34 So.2d 84 (La.App. 1 Cir. 1948).[3]See also City of Covington v. Glockner, 527 So.2d 1137 (La.App. 1 Cir. 1988); Bart v. Wysocki, 558 So.2d 1326 (1990).
La.Civ.Code art. 458 specifically states:
Works built without lawful permit on public things, including the sea, the seashore, and the bottom of natural navigable rivers, that obstruct the public use may be removed at the expense of the persons who built or own them at the instance of the public authorities, or of any person residing in the state.[4]
The owner of the works may not prevent their removal by alleging prescription or possession.
(Footnote added.)
In the instant matter, the plaintiffs, adjoining landowners and residents of this state, have filed suit seeking to have the DeLongs enjoined from completing a fence built on land which has been determined by the trial court to be public. We reiterate that although the DeLongs were originally granted a permit by the city to construct the fence, they were later notified by a city official that the permit had been issued in error. There is no evidence that the DeLongs have submitted an application for or received any other lawful permit allowing them to construct their fence. Moreover, the city has set forth in its brief to this court that the permit was issued on the mistaken belief that the dedication of the right-of-way had been revoked and that such belief was erroneous. The city states that it agrees with the plaintiffs' position that the fence is unlawfully placed on public land and that the trial court erred in not ordering its removal. Therefore, we must next determine whether the fence that is being built on public land, without a lawful permit, obstructs the *825 public's use of the land.[5]
The land was originally dedicated for the development of a public street within the College Town Subdivision. Due to rising waters of College Lake, which now has overtaken a substantial portion of the original right-of-way, the land has never been developed into a paved public street. Nevertheless, the city has used the right-of-way to maintain a sewerage line for the subdivision which eventually led to the construction of a sewer lift station in the right-of-way in 1996. The defendants argue that the fence does not obstruct the use of the right-of-way since there is no need for vehicular or pedestrian traffic to cross the fenced property. The defendants further state that the record is devoid of any evidence that there is a public need for access to or across the fenced property at this time, and therefore, no public use is obstructed. The trial court determined that the fence does interfere with the public access to the western thirty feet of the right-of-way for a distance of 150 feet, but, if a gate were constructed at each end of the fence, public access would not be restricted.
We find the argument of the defendant and the reasoning of the trial court to be in error. As explained above, since the land is public, each citizen enjoys the right to use the property in any manner which is not in violation of the applicable law governing the use of such property. If the DeLongs were allowed to fence in the portion of the right-of-way adjoining their property, they would inevitably obstruct the public use of that segment of land. Fencing would clearly obstruct the other residents of the community from freely moving about the right-of-way, as well as hinder the city from maintaining the utilities in the right-of-way as the need arises. We reject the DeLongs' contention that the fence cannot be an obstruction of public use because there is no evidence that the public uses the property or that there is a need for the public to use this property. Despite the fact that the right-of-way may never be used as a street, it is, at this time, public property. Therefore, the DeLongs may not exercise any greater right over the land than is afforded every member of the public.[6]

Remedy
Article 458 is the codification of a citizen's right to force the removal of works which obstructs the use of public land, when a person has constructed the work without the permission of the government.[7] Such interference with a citizen's right of use has been found to give rise to an action for an injunction. See Giardina, 310 So.2d 607; Doody, 247 La. 839, 174 So.2d 798; Dudley, 14 La.Ann. 283; Johnson, 50 So.2d 490. See also A.N. YIANOPOULOS, LOUISIANA CIVIL LAW TREATISE, PROPERTY, § 93 (3d ed.1991).
La.Code Civ.P. art. 3601 provides in part, "[a]n injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in cases specifically provided by law. ..." (Emphasis added.) It has been reasoned that Article 458 is a "case specifically provided by law" which entitles a *826 petitioner to a mandatory injunction upon proof of the elements as set forth therein.[8]See Giardina, 310 So.2d 607. Professor A.N. Yiannopoulos has explained that Article 458 "contemplates injunctive relief without the limitations of Article 3601 of the Louisiana Code of Civil Procedure. Therefore, the party requesting injunctive relief does not need to show threat of immediate and irreparable injury." YIANNOPOULOS, LOUISIANA CIVIL LAW TREATISE, PROPERTY, § 93. If a person is determined to be in violation of La.Civ.Code art. 458, he has by the express elements of the article, been found to have acted without a lawful permit. Thus, his actions should be considered unlawful. When a petitioner seeks to have a person enjoined from continuing an illegal act, he is not required to show immediate or irreparable harm. Jurisich v. Jenkins, 99-76 (La.10/19/99); 749 So.2d 597; Hughes v. Muckelroy, 97-0618 (La.App. 1 Cir. 9/23/97); 700 So.2d 995; Camp, Dresser & McKee, Inc. v. Steimle & Assocs., Inc., 94-547 (La.App. 5 Cir. 2/15/95); 652 So.2d 44.
Accordingly, we find based on Article 458, if it is proven that a person has built a work which obstructs the public's use of public land, then the state, its political subdivisions, or a private resident is entitled to an order enjoining the person from further constructing the work and/or a mandatory injunction compelling the defendant to remove the obstruction. Petitioners need not make a specific showing of irreparable harm.
The trial court stated that the portion of Article 458 requiring the removal of an obstruction at the owners' expense is discretionary insofar as it reads "works may be removed at the expense of the persons who built or own them." We find that the discretionary "may" found in the article does not pertain to the trial court's decision as to whether to order the removal of the obstruction. Rather, we conclude that once the public authorities or citizen brings forth an action requesting injunctive relief under 458 and proves the necessary elements thereof, the mandatory language of Article 3601 directing that an "injunction shall issue in cases specifically provided in law" controls.[9] Therefore, we find that the trial court erred in its denial of the plaintiffs' petition for injunctive relief.
We recognize the fact that the DeLongs began construction of the fence after obtaining what they believed to be a lawful permit from the city. However, this does not negate the fact that the permit was issued in error and the existing portion of the fence unlawfully remains on public land. We find no merit in any argument to allow a partially constructed fence to remain in light of the fact that the fence could not be lawfully completed without further permission from the city.
*827 In sum, we conclude that the plaintiffs are entitled to judgment enjoining the DeLongs from further constructing a fence within the public right-of-way without a lawful permit, and a mandatory injunction commanding the DeLongs to remove the existing portions of the fence which lie in the right-of-way.

DECREE
For the foregoing reasons, the judgment of the trial court denying the plaintiffs' request for a permanent injunction is reversed. We remand this case to the district court with instructions to enter a judgment permanently enjoining the defendants, Charles and Junalise DeLong, from further constructing a fence within the property referred to as the "Princeton Avenue right-of-way" and a mandatory injunction directing the DeLongs to remove all existing constructions from the right-of-way. All costs of this appeal are assigned to the defendants, Charles and Junalise DeLong.
REVERSED AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] After review of the record before us, we note the existence of an answer to the appeal filed by the DeLongs wherein they raise two issues. First, the DeLongs state they were aggrieved by the portion of the judgment declaring that the conditions for revocation of the dedication of the Princeton Avenue right-of-way as set forth in Ordinance 8111, had not been fulfilled. Second, they allege that the trial court erred in denying their previously filed peremptory exception of nonjoinder of parties needed for a just adjudication. Notwithstanding these assertions, we find that the DeLongs have failed to brief the merits of these issues to this court. Although the DeLongs have filed a brief as appellees in this matter, our review of this brief reveals no argument in support of the assertions made in their answer. Therefore, according to the Uniform Rules-Louisiana Courts of Appeal, Rule 2-12.4, issues not briefed on appeal are deemed abandoned. See Devers v. Southern University, 97-259 (La.App. 1 Cir. 4/8/98); 712 So.2d 199; Wilson v. Inessa Stewart's Antiques, Inc., 96-2767 (La.App. 1 Cir. 2/20/98); 708 So.2d 1132, writ denied, 98-777 (La.5/8/98); 718 So.2d 435.
[2] A.N. YIANNOPOULOS, LOUISIANA CIVIL LAW TREATISE, PROPERTY § 93 (3d ed.1991).
[3] The cases cited were decided prior to the revision of the present La.Civ.Code. art. 458. Revision Comment (a) of Article 458 states: "This provision reproduces the substance of Article 861 of the Louisiana Civil Code of 1870. It does not change the law." See Giardina v. Marrero Furniture, Co., 310 So.2d 607, 611, n. 4 (La.1975) stating that according to the Projet of the Civil Code of 1825, La.Civ.Code art. 861 was derived from Las Siete Partidas; and revised without change in the Revised Civil Code of 1870.

Former Article 861 read in pertinent part:
Works which have been formerly built on public places, ...which obstruct or embarrass the use of these places, ... may be destroyed at the expense of those who claim them, at the instance of the corporation of the place, or of any individual of full age residing in the place where they are situated.
[4] Compare Article 458 with former Article 861 which granted the right of action to "any individual of full age residing in the place where they (works built on public land) are situated."
[5] See Giardina, 310 So.2d at 612-613, (discussion of "obstruct or embarrass," terms contained in former Civil Code Article 861).
[6] See Code of Ordinances City of Baton Rouge § 2:50 which states, "no temporary or permanent... fence ... or other obstruction shall be erected or permitted to remain after being erected, on any ... public place, except by permission of the council, and except as is provided in section 2:152(b). (Section 2:152(b) relates to the showing of wares on public sidewalks.)
[7] Cf. Howcott v. Ruddock-Orleans Cypress Co., 83 So. 586, 146 La. 318 (1919); Herlitz v. City of Baton Rouge, 298 So.2d 140 (La.App. 1 Cir.1974); (holding that before an individual is allowed to champion a right that belongs to the public as a whole, he must show some injury peculiar to himself.) See Joseph J. Jacobs, Comments, The Encroachment of Private Works Upon Public Land in Louisiana, 23 Tul.L.Rev. 551 (1949).
[8] "A mandatory injunction commands a party to take a specific action." City of New Orleans v. Board of Directors of the Louisiana State Museum, 98-1170, p. 11 (La.3/2/99); 739 So.2d 748, 756. See Alvin B. Rubin, Comment, The Mandatory Injunction in Louisiana, 4 La.L.Rev. 422 (1942).
[9] See Giardina, 310 So.2d 607, n. 4; citing Laws 3 and 23 of the 32d Title of the Third Partida (from which Article 458 derived), which stated that a structure built on public land should be torn down, however, granted the right to the public authorities to not have the structure demolished, rather, retain the building for its own use. It reads in part:

No man should build a house, or any other edifice or structure upon the squares, commons, or streets, which are the property of cities and towns or other communities; for places of this kind, which have been left for the convenience and common benefit of all who resort there, should not be appropriated or cultivated by any person for his own benefit. When anyone acts contrary to this rule, whatever he has built there should be torn down and destroyed. Where the Council of the community where this has been done agrees to retain said building for its own use, and does not desire it to be demolished, it can do so; and the income derived therefrom should be used by it just as the other common revenues which it receives.
(Emphasis added.)