Dear Secretary McKeithen:
You requested the opinion of this office concerning Lakeshore Estates Community Development District Number 1 and Number 2 and Lakeshore Marina Community Development District (collectively, the "District"), which were established pursuant to the Louisiana Community Development District Act, La.R.S. 33:9039.11, et seq. (the "Act").
Your question is whether the District is prohibited from acquiring roadways as infrastructure funded by community development district bonds pursuant to the Act if there is controlled access by the public entity to these public roadways.
La.R.S. 39:9039.13(5) defines "community development district" to mean a special district as provided in Article VI, Section 19 of the Constitution of Louisiana, which special district is limited to the performance of those specialized functions authorized by La.R.S. 39:9039.11, et seq.
La. Const. Art. VI, Sec. 19 authorizes the legislature to create special districts, boards, agencies, commissions and authorities of every type and grant to the special districts, boards, agencies, commissions and authorities so created such rights, powers and authorities as it deems proper, including, but not limited to, the power of taxation and the power to incur debt and issue bonds. Such special districts are political subdivisions of the State. La. Const. Art. VI, Sec. 44.
As stated in La.R.S. 33:9039.12, the legislature enacted the Act because of the need to authorize a uniform procedure by general law to establish an independent special district as an alternative method to manage and finance basic services for community development through the levy and collection of special assessments. A community development district is authorized to issue bonds or other evidences of indebtedness to provide funds to fulfill and achieve its public purpose or corporate purposes. La.R.S. 39:9039.22. The legislature also determined that the creation of these districts and the carrying out of their public functions and corporate purposes is, in all respects, a public and governmental purpose for the benefit of the people of the state, and for the improvement of their health, safety, welfare, prosperity, and security. La.R.S. 33:9039.26.
A community development district is a political subdivision which must act for public and governmental purposes for the benefit of the people of the state. Thus the question becomes, can public roads be gated so that only the property owners abutting the roads and their invited guests may use the road, but the general population cannot.
Things are divided into common, public and private. La.C.C. 448. Common things may not be owned by anyone. They are such as the air and the high seas which may be freely used by everyone conformably with the use for which nature has intended them. Public things are owned by the state or its political subdivisions in their capacity as public persons. Public things that belong to the state are such as running waters and the seashore. Public things that may belong to political subdivisions of the state are such as streets and public squares. La.C.C. 449. Public things and common things are subject to public use in accordance with applicable laws and regulations. La.C.C. 452.
A road may be either public or private. A public road is one that is subject to public use. The public may own the land on which the road is built or merely have the right to use it. A private road is one that is not subject to public use. La.C.C. 457. If the road is public, then it is subject to public use. Id; Vernon Parish Police Jury v. Buckley, 00-00045 (La.App. 3 Cir. 11/2/00), 776 So.2d 17; St. Charles ParishSchool Board v. P L Investment Corporation, 95-2571 (La. 5/21/96),674 So.2d 218. The land upon which a road lies may either be publicly or privately owned. If it is privately owned, then it is a private thing subject to the public use. Id. The streets which belong to political subdivisions of the state are owned for the benefit of the public. A political subdivision owns a street subject to public use in its capacity as a public person. Walker v. Coleman, 540 So.2d 983 (La.App. 2nd Cir. 1989).
It is a violation of good faith to the public, and to those who acquired property in reference to a plan of a city with a view to the enjoyment of the use thus publicly granted, to afterwards appropriate a street to private uses. City of Baton Rouge v. T. J. Bird, Sheriff, etal, 21 La. Ann. 255 (1869). Also see De Armas, et al v. Mayor, etc. ofNew Orleans, 5 La. 132 (1833), dismissed for lack of jurisdiction34 U.S. 9(Pet.) 224 9 L.Ed. 109 (1835). A municipal corporation has no authority to extinguish public use of public property or divest such property of its public character. Police Jury of the Parish ofPlaquemines v. Foulhouze, et al., 30 La. Ann. 64 (1878). A publicly owned street becomes public property belonging to all in common. Town ofNapoleonville v. Boudreaux, 142 So. 874 (La.App. 1st Cir. 1932).
In Op.Atty.Gen. 01-0229, this office determined that the City of Lake Charles could not legally accept the dedication to the public of a gated street which the owners desired to dedicate to the public so as to obtain public maintenance yet requiring the street to remain gated, stating:
 ". . . we are of the opinion that the subdivision residents would have no legal right to obstruct a public road, be it by means of a controlled access gate or otherwise, as the property would be publicly held, affording Prien Oaks residents no right to prevent ingress or egress. A public road is a way open to all the people, without distinction, for passage and repassage at their pleasure. Galloway v. Wyatt Metal Boiler Works, 189 La. 837, 181 So. 187 (La. 1938). (See also Att'y Gen. Op. No. 99-345) By distinction, private roads are those which are only open for the benefit of certain individuals, to go from and to their homes, for the service of their lands, and for the use of some estate exclusively. Id.
 Under the alternative scenario of dedicating only a servitude of public use, like results occur. The public is entitled to full, unhindered and unobstructed use of a servitude of public passage. Melancon v. Giglio, 96-2507 (La.App. 1 Cir. 3/13/98), 712 So.2d 535 citing Wright v. Dep't. of Highways, 342 So.2d 230, 232 (La.App. 1st Cir. 1976), writ denied 343 So.2d 1075 (La. 1977). A controlled access gate such as that which is presently in place, if opened and closed by the residents at their leisure, would constitute an obstruction and hindrance to the use and enjoyment of the roadway by the general public.
 In summary . . . With regard to dedication of the private drive to the City of Lake Charles, we find that no matter the extent of the dedication, any obstruction such as the gate now in place would be impermissible. This finding aside, any transaction that purports to make a private drive/road public yet retains in the residents the power to control ingress and egress, no matter how limited, could appear to the objective observer as constituting an attempt to indirectly circumvent the prohibitions contained in Article VII, Section 14 for the nature of the drive would remain private."
Article VII, Section 14 of the Louisiana Constitution prohibits the loan, pledge, or donation of the funds, credit, property, or things of value of the state or of any political subdivision "to or for any person, association, or corporation, public or private." It is without question that any expenditure of public funds towards maintenance of a private drive would violate this Constitutional prohibition. Ops.Atty.Gen. 01-229, 76-649, 77-1594, 78-1643. See also Op.Atty.Gen. 02-153.
We further call your attention to Op.Atty.Gen. 95-138 and 95-101 both of which found that a governing authority has the authority to close a public road or street upon following the applicable provisions of law requiring a finding that the public thoroughfare is no longer needed for public use, followed by a formal act of revocation.
We are cognizant of Op.Atty.Gen. 95-101(A) which indicated that Jefferson Parish could authorize a gate restricting access to public use of street without first revoking the public street if there is a valid exercise of the police power in the interests of public health, safety, morals, and overall welfare, assuming that there is a reasonable relationship between the ordinance and the public good and safety. While we recognize the police power that is granted to political subdivisions, we suggest that gating a public subdivision street so that only the residents of the street and their invitees may use the street would violate the public policy set forth in Civil Code art. 457 that a public road is subject to public use. Once the street is gated, the street would only be for private use. Accordingly, Op.Atty.Gen. 95-101(A) is recalled.
We must also note that if the purpose of gating the street is to keep certain types of people from traveling on the street, such may violate Article I, Section 12 of the Louisiana Constitution, which provides that "[i]n access to public areas, accommodations, and facilities, everyperson shall be free from discrimination based on race, religion, or national ancestry and from arbitrary, capricious, or unreasonable discrimination based on age, sex, or physical conditions." (Emphasis added).
Members of the general public are afforded a right to participate in the public use of public land, which is neither a personal right nor a real right, but an incident of its personality. See Civil Code art. 452. However, this right is subject to compliance with the applicable laws and regulations of the state and its political subdivision which are enacted to safeguard the public use in the interest of all. Id. Louisiana Civil Code Article 458 grants to a citizen of the state a right of action coincidental with that of the governing authority to sue for the removal of structure which physically obstruct the citizens right of use. Worthenv. DeLong, 1999-1149 (La.App. 1 Cir. 6/23/00), 763 So.2d 820.
In Shepherd v. Third Municipality, 6 Rob. 349, 41 Am. Dec. 269, relative to certain valuable sawmills placed on the banks of a river, the Court stated:
 "The street and the banks of the river are `loci publici' — out of commerce — and the municipal authorities are bound to see that the use of them by the public be not obstructed; but they have no power to allow any erection thereon which may render their use incommodious. They may, indeed, temporarily tolerate works thereon, which they may deem not injurious to the rights of the public . . ." (Emphasis added)
We also call your attention to R.S. 48:512 which provides in pertinent part:
 "A. No person shall close, obstruct, or change any legal road, public road, or street, as defined in R.S. 48:491 and being a parish or municipal road, except upon order of the governing authority of the parish for a parish road, whether or not within a municipality, or upon order of the governing authority of the municipality for a municipal road, except as hereinafter provided.
 B. If any public road or street is closed,
obstructed, or changed in violation of the provisions of this Section, the governing authority of the parish or the governing authority of the municipality shall summarily open the road, remove all obstructions therefrom, and restore it to its former condition, at the expense of the person who closed, obstructed, or changed the public road or street. . ." (Emphasis added)
We would also note that R.S. 14:96 defines the crime of aggravated obstruction of a highway of commerce which is the intentional or criminally negligent placing of anything, or performance of any act, on any railway, railroad, navigable waterway, road, highway, thoroughfare, or runway of an airport, wherein it is foreseeable that human life might be endangered. R.S. 14:97 defines the crime of simple obstruction of a highway of commerce as the intentional or criminally negligent placing of anything or performance of any act on any railway, railroad, navigable waterway, road, highway, thoroughfare, or runway of an airport, which will render movement thereon more difficult.
Based upon the foregoing, it is the opinion of this office that the District may not acquire roadways as infrastructure funded by community development district bonds pursuant to the Act if there is controlled access by the public entity to the public roadways.
Trusting this adequately responds to your request, we remain
Yours very truly,
 CHARLES C. FOTI, JR. Attorney General
 BY: ________________________________ MARTHA S. HESS Assistant Attorney General
CCF, JR/MSH